# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

FRANK J. FOSBRE, JR.,

    Plaintiff,

v.

LAS VEGAS SANDS CORP., et al.,

    Defendants.

Case No. 2:10-CV-00765-KJD-LRL

**ORDER**

Currently before the Court are Motions to Consolidate and for Approval of Lead Counsel (##8, 12) filed by Movants Alvaro Elizondo et al., ("Elizondo Group") and Pension and Retirement Group, et al., ("Pension Group") respectively, together with Memoranda in support of each Motion (##14, 15). Additionally the Court has considered both the Pension Group's Reply (#17), and Elizondo Group's Reply (#19).

Upon consideration of the Motions, Memoranda, and Replies and for the reasons stated herein, the Court finds that this action should be consolidated with Combs v. Las Vegas Sands, 2:10-cv-1210-PMP-PAL, and that Movant Pension and Retirement Group be appointed lead counsel.

**I. Factual Background**

The Complaint in this case was filed as a federal securities derivative class action under Fed. R. Civ. P. 23(a), and (b)(3) on May 24, 2010 on behalf of purchasers of the common stock of Las Vegas Sands Corporation ("Las Vegas Sands" or "Sands") between August 1, 2007, and November 6, 2008, inclusive, seeking remedies under the Securities Exchange Act of 1934 ("Exchange Act").[1] The action is brought against Las Vegas Sands and several of its officers, including Director Sheldon

---

[1] The class period alleged in the Combs action is June 13, 2007 through November 11, 2008, inclusive. Combs v. Las Vegas Sands, 2:10-cv-1210-PMP-PAL, Compl. ¶ 1.) In its pleadings in this action however, the Elizoldo Group refers to the "Class Period-ending disclosure" as November 11, 2008. (See #14 at 4.)

G. Adelson ("Adelson"), and President/Chief Operating Officer, William P. Weidner ("Weidner") (collectively referred to herein as "Defendants").  On July 26, 2010 both Movants filed Motions to Consolidate, and for Approval of Lead Counsel.

**II. Legal Standard**

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") the Court must first decide whether to consolidate the Related Actions, and then select a plaintiff to lead the litigation on behalf of the putative class.  <u>See</u> 15 U.S.C. §78u-4(a)(3)(B)(ii).  Here, both of the related actions involve the same parties, and the same or similar issues of law and fact, making consolidation appropriate.[2]

The PSLRA, establishes the procedure for appointment of lead plaintiff in private actions arising under the Exchange Act when brought by a class action plaintiff.  15 U.S.C § 78u-4(a)(1) and (a)(3)(b)(ii).  First, the plaintiff who files the initial action must appropriately publish notice to the class within 20 days after filing the action, informing purported class members of their right to file a motion for appointment of lead plaintiff.  15 U.S.C § 78u-4(a)(3)(A) and (B).  Within 60 days after publication of that notice, any person who is a member of the proposed class may apply to the Court to be appointed lead plaintiff.  15 U.S.C § 78u4(a)(3)(i)(II).

The PSLRA also provides that within 90 days after publication of notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C § 78u-4(a)(3)(A)(B).  The Motions to be Appointed Lead Plaintiff now pending before the Court were timely filed in response to the statutory notice of the action.

Accordingly, the Court must next determine the most adequate plaintiff to lead the litigation on behalf of the putative class.  In determining the "most adequate plaintiff" the PSLRA provides that:

---

[2]Identical Motions to Consolidate and to be Appointed Lead Counsel were filed by the Movants in both related actions.  (<u>See</u> Case No. 2:10-cv-1210-PMP-PAL (## 6, 10.))

2

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class, or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

      As stated above, both Movants seek to be appointed lead plaintiff. According to the record, there are no other applicants (in either this, or Case No. 2:10-cv-1210-PMP-PAL ) who have sought, or are seeking, appointment as lead plaintiff, with a larger financial interest than the Pension Group. Specifically, the Pension Group avers that it has suffered losses of approximately $6.9 million—and has the largest financial interest in the relief sought by the class. (#16 Ex. 3.) The Elizondo Group, in opposition, concedes that the Pension Group has the greatest financial interest in the relief sought by the class, yet claims that the Pension Group fails to satisfy Rule 23's typicality requirement. The Elizondo Group argues that the Pension Group is atypical of other class members because it "is subject to unique defenses concerning reliance" because it bought the majority of its Las Vegas Sands shares after the Sands auditor had expressed doubt about the company's ability to continue as a "going concern." (#14 at 2.) The Court however, does not find that the timing of the Pension Group's stock purchase subjects the Group to unique defenses per se, or necessitates a finding that it is atypical of the class.

      At the lead plaintiff stage, the typicality inquiry is "'intended to assess whether the action can be efficiently maintained as a class and whether the [proposed lead plaintiffs] have incentives that align with those of absent class members so . . . that the absentees' interests will be fairly

3

1  represented.'"  Takeda v. Turbodyne Techs., Inc., 67 F. Supp. 2d 1129, 1136; Tanne v. Autobytel,
2  Inc., 226 F.R.D. 659, 666 (C.D. Cal. 2005).  Fed. R. Civ. P. 23(a)(3) requires that "the claims or
3  defenses of the representative parties [be] typical of the claims or defense of the class."  Fed. R. Civ.
4  P. 23(a)(3).  The Ninth Circuit has stated that "[u]nder the rule's permissive standards, representative
5  claims are 'typical if they are reasonably coextensive with those of absent class members; they need
6  not be substantially identical."  Dukes v. Wal-Mart, Inc., 509 F.3d at 1184 (9th Cir. 2007) (quoting
7  Hanlon v. Chrysler Corp, 150 F.3d 1011, 1020 (9th Cir. 1998)).  "Some degree of individuality is to
8  be expected in all cases, but [ ] specificity does not necessarily defeat typicality."  Id. (citing Staton v.
9  Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003).

10  The Elizondo Group seeks to rebut the presumption that the Pension Group should be the
11  lead plaintiff by emphasizing that the Pension Group bought the bulk of its Sands' shares subsequent
12  to PricewaterhouseCoopers' ("PwC") issuance of a "partial disclosure that [it] was skeptical of
13  Sands' ability to continue as a going concern" on November 6, 2008, which was followed by a 33%
14  drop in the company's stock price.  (#14 pg 3; Compl. ¶ 52.)  The Court however, does not find this
15  to be demonstrative that the Pension Group did not rely on the market integrity of Sands' stock.  The
16  cases cited by the Elizondo Group are distinguishable from the instant case, as the Elizondo Group
17  has produced no evidence, or even alleged that the Pension Group was aware of inside information, a
18  need for corrective disclosure or had reason to suspect fraud from the Defendants.

19  Rather, the Elizondo Group's own recitation of the facts reflects that the value of Sands'
20  stock had advanced and receded numerous times during months prior to and during the alleged class
21  period.[3]  Perhaps most telling however, is that while attempting to assert the significance of the

---

[3] For example, the Combs Complaint alleges *inter alia* numerous stock drops during the Class Period, including a 10.8% decline after the September 10, 2008 announcement; a 15.4% decline after the October 2, 2008 announcement; 29.9% and 23% declines after the October, 22, 2008 announcement, and a 33% decline after the November 6, 2008 disclosure.  (See Combs v. Las Vegas Sands, 2:10-cv-1210-PMP-PAL, Complaint ¶¶ 56–68.)   The Fosbre Complaint alleges *inter alia* stock drops of 10.8% after a Nevada Gaming Control Board report on September 10, 2008; a drop of 15.4%  after news of travel restrictions in Macau on October 2, 2008; a drop of 15.1, 29.9, and 23% after partial disclosure/news regarding plans to participate in a capital raising program on October 24, 2008.

November 6, 2008 partial disclosure by PwC, the Elizondo Group manifests the opposite, by grouping the November 6, 2008 partial disclosure together with "other partial disclosure[s] alleged in the Complaints." (#14 pg. 3, citing <u>Fosbre Compl.</u>, ¶ 62.) Also germane to this analysis is the fact that it was only after the Pension Group purchased the bulk of its Sands' stock that Sands made the Class Period-ending announcement that the company was suspending its construction activities in Macau and was forced to "raise more than $2 billion in capital." (#17 pg 8, citing <u>Combs</u> Compl. ¶ 68.)

Accordingly, the Court finds that the presumption of reliance created by the Pension Group's financial interest survives the Elizondo Group's allegations of atypicality. Additionally, the Court finds that the Pension Group has demonstrated it has a sufficient stake in the outcome of the litigation to ensure vigorous advocacy on behalf of the putative class.

**IT IS HEREBY ORDERED** that Movant Pension and Retirement Group's Motion to Consolidate and to be appointed Lead Counsel (#12) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Movant Alvaro Elizondo's Motion to be appointed Lead Counsel (#8) is **DENIED**.

DATED this 31st day of August 2010.

_____
Kent J. Dawson
United States District Judge