UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

FRANK J. FOSBRE, JR.,

    Plaintiff,

v.

LAS VEGAS SANDS CORPORATION, *et al.*,

    Defendants.

Case No. 2:10-CV-00765-KJD-GWF

**ORDER**

    Before the Court is the Motion to Dismiss Consolidated Amended Class Action Complaint of Defendants Las Vegas Sands Corp. ("LVS" or the "Company") Sheldon G. Adelson, and William P. Weidner (collectively "Defendants") (#37). Plaintiff Frank J. Fosbre Jr., individually and on behalf of all others similarly situated ("Plaintiffs") have filed a response (#43) and Defendants filed a reply (#51) and a Notice of Supplemental Authority (#53).

I.  Background

    This is a class action brought on behalf of purchasers of LVS common stock between August 2, 2007 and November 6, 2008 (the "Class Period"). LVS operates resorts and gaming properties in Las Vegas, Macao, and Singapore. Prior to the Class Period, LVS was in the process of developing additional properties in Las Vegas and Macao, including the Palazzo Resort Hotel Casino in Las Vegas, the Venetian Macao, and other major projects on the Cotai Strip in Macao.

    In 2007 and 2008 the world-wide economic retraction impacted LVS and its competitors. LVS began to have serious liquidity problems and risked triggering a breach of the maximum leverage ratio covenants in its agreement with lenders. These disruptions also affected LVS's ability to proceed on the expansion plans in Las Vegas and Macao. During this time, Defendants made

public statements about development plans, liquidity, and equity offerings that form the basis of this lawsuit.

In September 2008, LVS issued $475 million in convertible senior notes which were purchased by the family of Defendant Adelson. LVS also suspended portions of its development scheme in order to focus on properties with high returns. In November 2008, LVS raised $2.1 billion in new equity. During this period LVS stock lost much of its value.

Plaintiffs claim that during the Class Period, Defendants knowingly or recklessly made misrepresentations and omissions about LVS, its development plans, and its financial condition. Plaintiffs assert violations of §10(b) of the Securities Exchange Act of 1934 and assert a claim against each of the individual Defendants under §20(a) of the Exchange Act.

II. Legal Standards

 A. Pleading Requirements for Securities Actions

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Pursuant to this section, the Securities and Exchange Commission promulgated Rule 10b–5, which makes it unlawful, among other things, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).

Congress drafted the Private Securities Litigation Reform Act ("PSLRA") to require plaintiffs seeking redress for security fraud to meet a higher pleading standard than plaintiffs in other types of actions. The PSLRA requires that "[i]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). For §10(b) actions, the required state of mind is "knowing" or "intentional"

conduct or "deliberate recklessness." South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 782 (9th Cir. 2008).

Additionally, a complaint must "specify each statement alleged to have been false or misleading, [and] the reason or reasons why the statement is misleading." Id. Moreover, "if an allegation regarding [a] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Id. (quoting 15 U.S.C. § 78u-4(b)(1)(B)). As with all claims based on fraud, a plaintiff must also comply with Fed. R. Civ. P Rule 9(b), which requires that "the circumstances constituting fraud or mistake . . . be stated with particularity."

Claims that do not show "that the pleader is entitled to relief" under this heightened standard will be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). When ruling on such motions, the Court may take into account matters of public record, any exhibits attached to the complaint, and any documents referred to therein. See Dreiling v. American Exp. Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006) (in evaluating a motion to dismiss under Rule 12(b)(6), a court "may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings").

To avoid dismissal of a claim for relief under §10(b), plaintiffs must allege (1) a material misrepresentation or omission, (2) scienter or intent to defraud, (3) in connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005).[1]

---

[1] In their Motion, Defendants do not claim that Plaintiffs fail to adequately allege the connection to the purchase or sale of a security, reliance, or economic loss elements.

III.  Analysis

    A.  Material Misrepresentation or Omission

To establish a material misrepresentation or omission, plaintiffs must make allegations supported by specific facts showing either (1) a false statement of material fact, or (2) an omission of material fact that renders other statements misleading. See In re VeriFone Sec. Litig., 11 F.3d 865, 868 (9th Cir. 1993). "'The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading'" and the statement or omission must be shown to have been false or misleading when made.  In re Stac Electronics Securities Litigation, 89 F.3d 1399, 1404 (9th Cir. 1996) (quoting In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548-49 (9th Cir.1994) (overruled on other grounds).

With respect to alleged omissions, plaintiffs must identify the statements that are misleading due to alleged omissions and "specify the reason or reasons why the statements made by [the defendants] were misleading or untrue, not simply why the statements were incomplete." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir.2009) (internal quotations omitted).

Plaintiffs' complaint is lengthy and recounts numerous allegedly actionable statements. These statements can be subdivided into three basic topics on which Defendants allegedly made material misrepresentations or omission:  (1) Costs for planned development projects; (2) LVS's liquidity, cashflow and need for equity, and ability to obtain financing to complete its planned projects, and; (3) Operating conditions in Macao.

While the Court has doubts about the ultimate viability of the allegations in the Amended Complaint, for purposes of this motion to dismiss, the Amended Complaint sufficiently alleges false statements of material fact, or omissions of material fact that render other statements misleading.

    1.  Cost for Planned Development

Plaintiffs contend that Defendants understated true projected costs for the large development scheme undertaken by LVS in Macao.  According to Plaintiffs, internal documents show that LVS

projected costs of about $16 billion to complete this development, about $4 billion higher than the $12 billion LVS publicly stated. (Am. Compl. ¶¶ 116-121.) Defendants argue that Plaintiffs are making "apples-to-oranges" comparisons and that the true costs information was disclosed. (Motion at 21.) Plaintiffs point to an SEC filing on February 29, 2008 that states total Macao development costs would be approximately $12 billion and subsequent statements claiming that budgets were on track, that development was moving forward, and that no changes in the budgets on specific projects had taken place. (Am. Compl. ¶¶ 117, 233, 266.) Accepting the allegations in the Amended Complaint as true, Plaintiffs have sufficiently set forth facts showing why the statements were false when made and misleading to investors. Stac Electronics, 89 F.3d at 1404

           2.  LVS's Liquidity, Cashflow and Need for Equity and Ability to Obtain Financing to Complete its Planned Projects.

Plaintiffs allege that the Defendants made false representations about liquidity, cashflow, and funding available to LVS to continue the construction projects it had undertaken as part of its development plans in Macao. Defendants argue that LVS was candid about the need for additional funds for the Macao projects. They point to SEC documents filed around the time of the internal documents that state a "need to arrange for debt and/or equity financing in the near term to continue to fund" the projects. (Motion Exh. M at 54.) Defendants allege that they made similar statements in other SEC filings and in investors' conference calls. (See e.g. Exh. G at 27; Exh. M at 4, 54; Exh. O at 21; Exh. P at 7, 8.)

Plaintiffs allege that internal documents showed that LVS was aware that it was unable to fund its development projects without additional equity capital while publicly representing that it had a great deal of financial flexibility and ability to obtain new loans. (Am. Compl. ¶29-182, 270). According to Plaintiffs, Defendants made multiple statements that indicated that development was steadily progressing and that LVS had no reason to halt its development plans even though Defendants knew otherwise. (See Opp. at 6 n.2.) According to Plaintiffs, while internal documents showed serious financial problems in the Company, Defendant Adelson specifically stated that "the

5

bottom line is that we have plenty of flexibility and whatever liquidity we need we're going to have." (Compl. ¶¶ 264, 270).

Defendants did indicate that additional financing was necessary to finish the development projects in Macao. However, Plaintiffs have adequately pled facts asserting that investors were misled by statements that liquidity was not an issue and that development was steadily progressing. Plaintiffs also adequately plead that Defendants knew that the statements they were making were false. Cf. Rubke v. Capitol Bancorp Ltd, 551 F.3d 1156, 1162 (9th Cir. 2009) (where the court dismissed a claim based on allegedly misleading statements of opinion because, unlike here, plaintiff failed to allege that defendants did not believe the statements when they made them). Accordingly, Plaintiffs' claims based on these statements survive the motion to dismiss.

### 3. Operating Conditions in Macao

Plaintiffs claim that Defendants were aware that changes in the operating environment and economic conditions in Macao would significantly affect LVS, but failed to disclose this information. (Am. Compl. ¶¶ 130-153.) Defendants did disclose some financial information on revenue on Macao casinos and also discussed adjustments to junket commission in the context of the operating environment. (See e.g. Exh. H at 6-7; Exh. K at 4-5; Exh. N at 3-4; Exh. O at 3). However, Plaintiffs claim that public statements about business conditions in Macao were misleading because they allegedly did not disclose that, while LVS had reduced their commission rates, changes in operating conditions in Macao had caused commission rates to rise and VIP Volumes to decrease. Plaintiffs also contend that Defendants stated that conditions in Macao provided LVS with high returns and that the Venetian Macao was experiencing "strong visitation," success in retail operations, and progress in convention business while internal reports showed "weak visitation" and poor performance in the convention and retail business. (Am. Compl. ¶¶ 229-230).

The pleadings set forth specific facts asserting that investors were misled about LVS's ability to operate profitably given conditions in Macao and particularly about visitation at the Venetian Macao. Accordingly, these claims are sufficiently pled to survive the motion to dismiss.

B.  Scienter or Intent to Defraud

The Supreme Court has provided guidelines for courts determining whether a plaintiff has adequately pled scienter under the PSLRA. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007).  First, courts must "accept all factual allegations in the complaint as true." Id. at 322. Second, "courts must consider the complaint in its entirety," and the "[t]he inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 322-23.  Third, "the court must take into account plausible opposing inferences." Id. at 323.  Fourth scienter is adequately alleged if, "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 324.  "Tellabs counsels us to consider the totality of circumstances, rather than to develop separately rules of thumb for each type of scienter allegation." South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008).

Plaintiffs' Amended Complaint contains sufficient allegations to create a strong inference of scienter under the Tellabs guidelines.  Defendants argue that the complaint should be dismissed because it is deficient in some respects, including insufficient allegations of motive, reliance on a former employee's lawsuit and the fact that the information in the internal documents was allegedly disclosed.  Defendants also argue that a more plausible explanation lies in the global economic downturn that was concurrent with the Class Period. Plaintiffs' allegations are by no means perfect and the Court has doubts about whether the inferences of the Amended Complaint will survive a more stringent standard of review.  However, when taken collectively and assumed true, the facts alleged in Plaintiffs' complaint present a sufficiently cogent and compelling inference that Defendants recklessly or fraudulently made misstatements or omissions in violation of §10(b).  The facts in the complaint show a series of public statements on material issues that were inconsistent with what was allegedly known internally.  (See e.g. ¶¶ 207, 210, 214-215, 223-224, 226, 235-236, 238, 243-247, 255-256.)  Additionally, the motive allegations pled by Plaintiffs meet the standard of

1  Tellabs. 551 U.S. at 308 ("absence of a motive allegation is not fatal").  Although there are other
2  plausible explanations, the inference of scienter as pled by Plaintiffs is "at least as likely as any
3  plausible opposing inference." Id. at 329.  Accordingly, the Amended Complaint's allegations are
4  sufficient to create a strong inference of scienter.

5       C.  Loss Causation

6       To adequately plead loss causation, a complaint must provide a "short and plain statement"
7  under Fed. R. Civ. P. 8(a)(2) that "provides the defendants with notice of what the relevant economic
8  loss might be or of what the causal connection might be between that loss and the
9  misrepresentation." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005).  The complaint will not
10 be dismissed where it "offers 'sufficient detail to give defendants ample notice of [plaintiffs'] loss
11 causation theory'" and give the court some assurance that the theory has a basis in fact.  In re Gilead
12 Scis. Sec. Litig., 536 F.3d 1049, 1056 (9th Cir. 2008) (internal quotations omitted).  "So long as the
13 complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule12(b)(6)
14 dismissal is inappropriate." Id. at 1057. "This is not 'a probability requirement . . . it simply calls for
15 enough fact to raise a reasonable expectation that discovery will reveal evidence of loss causation."
16 Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  At this stage a plaintiff is not
17 required to show that a misrepresentation was "'the sole reason for the investment's decline in
18 value,'" as long as it is a "substantial cause." In re Daou Sys., 411 F.3d 1006, 1025 (9th Cir. 2005).
19      Plaintiffs provides detailed allegations of loss causation in the Amended Complaint.  ¶¶280-
20 284.  Specifically, Plaintiffs allege that LVS stock was inflated and that a series of firm-specific
21 fraud related disclosures starting in June 2008 contributed to a severe decline in the price of LVS
22 stock. (¶ 282.)  Defendants argue that the information at issue was previously disclosed and that, in
23 the midst of a global downturn, other factors caused the stock price to drop.  Although the Court has
24 doubts about Plaintiffs' loss causation theory, as pled, it is plausible.  The Court is not now sitting as
25 a trier of fact and "skepticism is best reserved for later stages of the proceedings when the plaintiff's
26

case can be rejected on evidentiary grounds." Gilead, 536 F.3d at 1057. Accordingly, the Amended Complaint adequately pleads loss causation.

### D. PSLRA Safe Harbor for Forward-Looking Statements

The PSLRA provides a statutory "safe harbor" to protect certain types of statements from liability under the securities laws. Statements fall within the safe harbor if they are (1) forward-looking statements identified as such and (2) "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i); In re Cutera Sec. Litig., 610 F.3d 1103, 1111 (9th Cir. 2010).

A "forward-looking statement" is any statement regarding (1) financial projections; (2) plans and objectives of management for future operations; (3) future economic performance; or (4) the assumptions "underlying or related to" any of these issues. Statements are forward-looking "as long as the truth or falsity of the statement cannot be discerned until some point in time after the statement is made." In re Splash Tech. Holdings Sec. Litig., 2000 WL 1727377, at *6 (N.D. Cal. Sept. 29, 2000); Constr. Laborers Pension Trust of Greater St. Louis v. Neurocrine Biosciences, Inc., 2008 U.S. Dist. LEXIS 38899, at *37-38 (S.D. Cal. May 13, 2008)

Appropriate "cautionary statements must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements, such as, for example, information about the issuer's business." Helwig v. Vencor, Inc., 251 F.3d 540, 558-59 (6th Cir. 2001) (en banc) (quoting H.R. Conf. Rep. No. 104-369, at 43 (1995)). The cautionary statement, however, "does not necessarily have 'to include the particular factor that ultimately causes the forward-looking statement not to come true.'" In re Cytyc Corp. Sec. Litig., 2005 WL 3801468, at *21 (D. Mass. March 2, 2005) (quoting H.R. Conf. Rep. No. 104-369, at 44). The Ninth Circuit has held that statements that fall within the safe harbor are not actionable. Cutera, 610 F.3d at 1112.

Defendants argue that Plaintiffs' complaint should be dismissed because "the bulk of the statements claimed by Plaintiffs to be false or misleading are forward-looking statements." (Motion at 34). Specifically, Defendants argue that the safe harbor protects statements related to (1) Macao construction costs and development plans; (2) statements related to the Company's predictions of future Macao market conditions; and (3) statements related to the Company's financing plans, future cash flows, and future liquidity.

Plaintiffs claim that the statements in calls and press releases were not accompanied by cautionary language because the statements cross-referenced other documents and used allegedly non-substantive "boilerplate." Plaintiffs also claim that Defendants statements that development projects were on track and that LVS had good access to credit markets and adequate liquidity were not forward-looking statements. Instead, according to Plaintiffs, although some of these statements were couched in the future tense, they were meant to convey information about the present and were misrepresentations of then-current business conditions.

The Company did provide meaningful cautionary statements on calls, in press releases, and in the other relevant documents. (See Motion at 35.) The language adequately described "what kind of misfortunes could befall the company and what the effect could be." Harris v. Ivax Corp. 182 F.3d 799, 807 (11th Cir. 1999). Further, Defendants cite ample authority demonstrating that cross-referencing to cautionary statements in other documents is appropriate for purposes of the PSLRA safe-harbor. See e.g. Employees Teamsters Local Nos. 175 and 505 Pension Trust Fund v. The Clorox Co., 353 F.3d 1125, 1133 (9th Cir. 2004) (oral statements are considered "accompanied" by cautionary language if "additional information concerning factors that could cause actual results to materially differ from those in the forward-looking statement is contained in a readily available written document" such as an SEC filing); In re Dothill Sys. Corp. Sec. Litig., 2009 WL 734296, at *13 (S.D. Cal. Mar. 18, 2009) (references to 8-K, 10-K, and 10-Q permitted, and cautionary language in those documents considered for purposes of evaluating applicability of safe harbor).

Some of the statements are undoubtedly forward looking, since their truth or falsity could not be determined until a later time. Splash Tech., 2000 WL 1727377, at *6. The safe harbor protects the statements about the timing and cost of planned construction projects referenced in ¶¶ 184, 190, 217, 231 (concerning features of the property), and 268 (concerning development plans) of the Amended Complaint. The safe harbor protects statements about availability of future funding referenced in ¶¶ 211, 219, 237 (except for statement regarding level of enthusiasm of bankers), 243, 248, 257, 264 (except statement of current flexibility), 270 (except statement about current flexibility), 272, and 275 of the Amended Complaint. The safe harbor protects statements about the implementation of a legal regime allowing the sale of condominiums contained in ¶¶ 209, 217, 262 (except statements recounting the indications Adelson had received regarding the prospect for co-op sales). The safe harbor protects statements about the Company's hopes for future performance in Macao contained in ¶¶ 198, 213(only statements about future impact of transportation infrastructure), 225, 240, and 246. The remainder of the statements are not protected by the safe harbor because their truth or falsity could be determined at the time they were spoken and therefore, they are not forward looking. Accordingly, the forward-looking statements are not actionable.

III. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Consolidated Amended Class Action (#37) is **DENIED** in part and **GRANTED** in part as set forth herein.

Dated the 24th day of August, 2011

_____
Kent J. Dawson
United States District Judge