MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP
Steve Morris, Bar No. 1543
Email: sm@morrislawgroup.com
Akke Levin, Bar No. 9102
Email: al@morrislawgroup.com
Raleigh C. Thompson, Bar No. 11296
Email: rct@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101
Telephone: (702) 474-9400
Facsimile: (702) 474-9422

**\*See Signature Block for Additional Counsel**

*Attorneys for Defendants*
*Las Vegas Sands Corp. and Sheldon G. Adelson*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| FRANK J. FOSBRE, JR., Individually and On Behalf of All Others similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LAS VEGAS SANDS CORP., et al.,<br><br>Defendants. | Case No. 2:10-cv-00765-KJD-GWF<br><br>**CLASS ACTION**<br><br>**LVS DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Consolidated with:<br>Case No. 2:10-cv-00120-KJD-GWF |
| SHIRLEY and WENDELL COMBS, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>LAS VEGAS SANDS CORP., et al.,<br><br>Defendants. | |

1

**TABLE OF CONTENTS**

2   TABLE OF CONTENTS ................................................................................. i

3   TABLE OF AUTHORITIES .......................................................................... iii

4   MEMORANDUM OF POINTS AND AUTHORITIES ................................1

5   I.     INTRODUCTION ................................................................................1

6   II.    ARGUMENT .........................................................................................5

7         A.    The Repleaded Statements Previously Dismissed by the Court
               Should Be Stricken ....................................................................................5

8

9         B.    The New Statements Similar to Those Previously Dismissed Should
               Also Be Dismissed .....................................................................................6

10             1.    Forward-Looking Statements Must Be Dismissed ..........................6

11             2.    Statements of Optimism Must Be Dismissed ...................................8

12         C.    The Remaining Statements Must Be Dismissed Because Plaintiffs
               Have Not Pled Falsity or Scienter ...........................................................9

13

14             1.    Statements about Plans to Raise Debt Financing and Flexibility
                  in Obtaining Financing Should Be Dismissed ...............................11

15                  a.    The Documents Show Financing Was Available in 2007 ......14

16                  b.    The Documents Show Financing Was Available in 2008 ......16

17             2.    Statements of Historical Fact Should Be Dismissed ........................19

18                  a.    Descriptions of Operating Results .........................................21

19                  b.    "Continued to Execute our Development Plans"/
                      Backward Looking Descriptions of Construction

20                       Progress ....................................................................................23

21                  c.    Discussion with the Macao Government Regarding
                      Four Seasons Macao Apartments ..........................................24

22

23             3.    The Remaining Statements Must Be Dismissed ..............................26

                  a.    Third Quarter 2007 ..................................................................26

24                  b.    January 4, 2008 Press Release .................................................27

25                  c.    April 30, 2008 Investor Call ....................................................28

26                  d.    Third Quarter 2008 ..................................................................29

27          D.    Plaintiffs' "Control Person" Claims Must Be Dismissed ...............................29

28

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1         E.      Dismissal Should Be With Prejudice ...................................................30

2  III.    CONCLUSION ....................................................................................................31

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

**TABLE OF AUTHORITIES**

Page(s)

FEDERAL CASES

*Abrams v. Baker Hughes, Inc.,*
    292 F.3d 424 (5th Cir. 2002) ...........................................................22

*Basic, Inc. v. Levinson,*
    485 U.S. 224 (1988) ...........................................................................10

*Brasher v. Broadwind Energy, Inc.,*
    2012 WL 1357699 (N.D. Il. Apr. 19, 2012) .....................................19

*Brody v. Transitional Hosp. Corp.,*
    280 F.3d 997 (9th Cir. 2002) ............................................................10

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,*
    2012 WL 3010992 (N.D. Cal. July 23, 2012) ..............................8, 27

*Davis v. Astrue,*
    2007 WL 2088580 (N.D. Cal. July 18, 2007) ...................................6

*DeFazio v. Hollister, Inc.,*
    2008 WL 958185 (E.D. Cal. Apr. 8, 2008) ....................................5, 6

*Glazer Cap. Mgmt., LP v. Magistri,*
    549 F.3d 736 (9th Cir. 2008) ............................................................11

*In re Advanta Corp. Sec. Litig.,*
    180 F.3d 525 (3d Cir. 1999) .............................................................23

*In re CDNOW, Inc. Sec. Litig.,*
    138 F. Supp. 2d 624 (E.D. Pa. 2001) ..............................................29

*In re Cutera Sec. Litig.,*
    610 F.3d 1103 (9th Cir. 2010) ............................................................5

*In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig.,*
    7 F.3d 357 (3d Cir. 1993) .................................................................22

*In re Downey Sec. Litig.,*
    2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ...................................11

*In re Duane Reade Inc. Sec. Litig.,*
    2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) ................................22

*In re Exodus Commcn's, Inc. Sec. Litig.,*
    2005 WL 1869289 (N.D. Cal. Aug. 5, 2005) ...................................30

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .............................................................13

*In re Lyondell Petrochemical Co. Sec. Litig.*,
984 F.2d 1050 (9th Cir. 1993) .......................................................10, 28

*In re MGM Mirage Sec. Litig.*,
2012 WL 1031926 (D. Nev. Mar. 27, 2012) .......................................12

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...............................................................10

*In re Polaroid Corp. Sec. Litig.*,
465 F. Supp. 2d 232 (S.D.N.Y. 2006) .................................................29

*In re Read Rite Corp. Sec. Litig.*,
335 F.3d 843 (9th Cir. 2003) ...............................................................30

*In re Rigel Pharms., Inc. Sec. Litig.*,
--- F.3d ----, 2012 WL 3858112 (9th Cir. Sept. 6, 2012) ...................13

*In re Sofamor Danek Group, Inc.*,
123 F.3d 394 (6th Cir. 1997) ........................................................22, 23

*In re Stac Elec. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ...........................................4, 9, 10, 19

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) ................................................7

*In re VeriFone Sec. Litig.*,
11 F.3d 865 (9th Cir. 1993) ........................................................9, 10, 28

*Janus Cap. Group, Inc. v. First Deriv. Traders*,
--- U.S. ---, 131 S. Ct. 2296 (2011) ....................................................27

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .............................................................30

*Mallen v. Alphatec Holdings, Inc.*,
--- F. Supp. 2d ----, 2012 WL 987314 (S.D. Cal. Mar. 22, 2012)........24

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
2012 WL 1868874 (N.D. Cal. May 22, 2012)...........................8, 13, 22

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .......................................................11, 13, 24

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

iv

*Rosenzweig v. Azurix Corp.,*
    332 F.3d 854 (5th Cir. 2003) ...............................................................22

*Rubke v. Capitol Bancorp Ltd.,*
    551 F.3d 1156 (9th Cir. 2009) .....................................................10, 13

*Searles v. Glasser,*
    64 F.3d 1061 (7th Cir. 1995) .............................................................10

*Taddeo v. American Invsco Corp.,*
    2011 WL 4346380 (D. Nev. Sep. 15, 2011) (Dawson, J.)................30

*Tavake v. Alameda County Board of Supervisors,*
    2005 WL 2290308 (N.D. Cal. Sept. 20, 2005) .................................6

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.,*
    2011 WL 1253250 (D. Ariz. Mar. 31, 2011) ....................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007).................................................................10, 11

*Thiel v. GMAC Mortg., LLC,*
    2011 WL 1322784 (E.D. Cal. Apr. 6, 2011) .....................................3

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) ........................................................25

*Zucco Ptrs., LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) .....................................................5, 30

**FEDERAL STATUTES**

15 U.S.C. § 78u-4 *et seq.*.............................................................................1

15 U.S.C. § 78u-5(i)(1) .............................................................................6, 7

**RULES**

Federal Rule of Civil Procedure 12(f) .........................................................5

Federal Rule of Civil Procedure 12(b)(6) ...................................................1

Rule 9(b) .................................................................................................1, 5

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

v

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1    Defendants Las Vegas Sands Corp. ("LVS" or the "Company") and Sheldon G.

2 Adelson (together, the "LVS Defendants") move the Court for an order dismissing the

3 Second Amended Class Action Complaint (the "Second Amended Complaint" or "SAC")

4 with prejudice for failure to state a claim upon which relief can be granted pursuant to

5 Federal Rules of Civil Procedure 9(b), 12(b)(6) and the Private Securities Litigation

6 Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* ("PSLRA").  This motion is based on the

7 following points and authorities, the accompanying exhibits and appendices, and the

8 pleadings, filings, correspondence, and orders on file with the Court.

MORRIS LAW GROUP

10    By_____

Steve Morris, Bar No. 1543
Akke Levin, Bar No. 9102
Raleigh C. Thompson, Bar No. 11296
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

Walter C. Carlson (*Pro Hac Vice*)
Courtney A. Rosen (*Pro Hac Vice*)
Meredith J. Laval (*Pro Hac Vice*)
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, IL 60603

*Attorneys for Defendants Las Vegas Sands
Corp. and Sheldon G. Adelson*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

This is plaintiffs' third effort at stating a cause of action.  This time, plaintiffs
have not only ignored the Court's prior rulings, but have done so in a manner that
reveals that there is no claim upon which relief can be granted.  Thus, the Second
Amended Complaint should be dismissed in its entirety, with prejudice.

In ruling on defendants' motion to dismiss the prior Amended Complaint,[1] the

_____

[1] Plaintiffs filed their initial complaints in May and July 2010.  Following the Court's

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1   Court expressed "doubts about the ultimate viability" of plaintiffs' allegations, and

2   dismissed many allegations as protected by the PSLRA safe harbor for forward-looking

3   statements. 8/24/11 Order (#55) at 4. The Court subsequently granted substantial

4   portions of defendants' motion for reconsideration, dismissing further allegations from

5   the Complaint, including all "allegations regarding statements from 2007." 7/11/12

6   Order (#86) at 19. Plaintiffs were given leave to attempt to amend their complaint.

7        Plaintiffs' new Second Amended Complaint does not simply seek to amend the

8   2007 allegations. Instead, it repeats allegations that the Court dismissed, adds new

9   allegations, and fundamentally changes the allegations that the Court allowed to

10  proceed. In short, the Second Amended Complaint is an entirely new complaint,[2] and

11  one that this Court should now dismiss in its entirety.

12       Significantly, the Second Amended Complaint newly incorporates

13  approximately 60 documents produced by LVS and third parties in discovery.

14  According to plaintiffs, they "provide[] significant detailed support for the falsity and

15  scienter elements with respect to the statements made by defendants." *See* Resp. to Mot.

16  to Extend Time (#90) at 1. In reality, however, these documents demonstrate what

17  defendants have said from the beginning: that this lawsuit is a wholly unwarranted

18  effort by plaintiffs in hindsight to turn the effects of the global recession on both the

19  gaming industry and the Company into a fabricated alleged scheme by the defendants

20  to defraud the Company's shareholders.

21       While this Court had to accept certain allegations as true for purposes of

22  defendants' prior motion to dismiss, plaintiffs have now pleaded the facts that are fatal

23  to their Second Amended Complaint. Specifically, while expressing doubts about the

24  viability of the Amended Complaint, the Court was faced with allegations that

25  _____

26  order appointing lead counsel and lead plaintiffs, plaintiffs submitted a Consolidated
    Amended Class Action Complaint in November 2010 ("Amended Complaint" or "AC").

27  [2] The Second Amended Complaint is 204 pages long. It contains 442 paragraphs,

28  approximately 242 of which contain new allegations.

2

- LVS sought and was denied significant financing (up to $10 billion) in 2007.
- LVS knew (as early as August 2007 and certainly by early 2008) that it would not be able to obtain debt financing to complete the Cotai Strip.
- LVS knew (as early as August 2007 and certainly by early 2008) that it would have to issue equity to avoid a liquidity crisis and covenant breach.
- Consequently, LVS knew that its development projects were not sustainable.

The documents now incorporated by plaintiffs flatly contradict these allegations.

- The documents show that LVS received the financing that it sought in 2007, and that LVS was not seeking $10 billion.
- The documents show that as late as July 29, 2008, LVS's bankers were working on (and had internally recommended approval of) a Macao refinance that would raise the money needed at that time to continue LVS's Cotai Strip projects.
- The documents show that as late as July 29, 2008, LVS and its bankers thought they could complete a $1.5 billion U.S. deal to address liquidity issues and avoid covenant breach, obviating the need for issuance of new equity.
- The documents show that LVS's bankers proposed a wide variety of options for obtaining the necessary funding, and slowing the pace of LVS's development projects was presented only as one option among many.

In short, the documents produced in discovery and now referenced in the Second Amended Complaint show that the Second Amended Complaint should be dismissed in its entirety.

Plaintiffs' decision to substantially amend their complaint and to rely on documents that contradict their allegations requires the Court to reexamine the sufficiency of plaintiffs' allegations as a whole. *See, e.g., Thiel v. GMAC Mortg., LLC,* 2011 WL 1322784, at **1-2 (E.D. Cal. Apr. 6, 2011) (dismissing previously sustained claims because "an amended complaint obliterates the existence of any previous complaint"); *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.,* 2011 WL 1253250, at *12 (D. Ariz. Mar. 31, 2011) (reexamining allegations previously held sufficient to state a claim because "(1) the operative complaint here differs from that in *Apollo I;* (2) the issues which these motions now raise were not actually decided in *Apollo I;* (3) backdating is a critical component of the SAC's alleged fraudulent scheme; (4) and the factual inaccuracies in the October 20, 2003 grant allegations mandate closer

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1   examination of the other five grant date allegations").

2           Indeed, the newly cited documents are not the only problem with the Second

3   Amended Complaint.  The Second Amended Complaint advances the new theory that

4   LVS allegedly knew that it could not complete its development projects or obtain future

5   funding because both its pace of development spending and operating results were

6   lower than had been internally projected in 2006 and early 2007.  *See, e.g.*, SAC ¶¶ 79-80,

7   90-111.  Not only is this theory premised on a *non sequitur* (*i.e.*, an assumption that

8   because actual results were lower than projections made months or years earlier, the

9   Company's entire development strategy was doomed to fail), it has no support in the

10  law.  A company's failure to meet its earlier internal projections is not fraud.  And the

11  law is clear that a company is not affirmatively required to disclose internal projections

12  or provide comparisons between actual results and earlier internal projections,

13  especially where, as here, the company did not provide public earnings guidance.  *See,*

14  *e.g., In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1406-07 (9th Cir. 1996).

15          Moreover, despite the Court's reasoned dismissal in two orders of many

16  statements as inactionable because they were forward-looking statements protected by

17  the PSRLA's safe harbor or inactionable optimism, plaintiffs blithely replead those

18  allegations in the Second Amended Complaint.  Plaintiffs offer no new allegations that

19  would render these statements actionable, and these allegations should be stricken and

20  dismissed.  Plaintiffs also challenge new forward-looking statements that are similar to

21  the ones previously dismissed by this Court, and new statements that contain language

22  nearly identical to what this Court previously dismissed as inactionable optimism, all of

23  which should be dismissed.

24          The remaining statements must be dismissed because plaintiffs have not pled

25  either falsity or scienter.  As discussed above, the documents incorporated by plaintiffs

26  reveal that the challenged statements regarding the Company's options for obtaining

27  additional financing were both objectively true and that defendants had a reasonable

28  basis for making them.  The remaining statements, once stripped of inactionable

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

4

1   optimistic language and forward-looking statements, are nothing more than truthful

2   statements of historical fact.  Finally, because plaintiffs cannot state a claim for primary

3   liability, they cannot establish any claim for "control person" liability.

4         For all of these reasons, the Second Amended Complaint should be dismissed in

5   its entirety.  Because the defects in the Complaint are not curable and plaintiffs have

6   already had an opportunity to amend, this dismissal should be with prejudice.  *See, e.g.,*

7   *Zucco Ptrs., LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

8   **II.    ARGUMENT**

9         The heightened pleading standards under the PSLRA and Rule 9(b) are set forth

10  in detail in the Court's August 24, 2011 and July 11, 2012 Orders.  Plaintiffs must allege

11  with sufficient particularity (1) a material misrepresentation or omission, (2) scienter or

12  intent to defraud, (3) in connection with the purchase or sale of a security, (4) reliance,

13  (5) economic loss, and (6) loss causation.  *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1107-

14  08 (9th Cir. 2010).  The Court previously dismissed many of plaintiffs' allegations for

15  failure to satisfy the first requirement.  Plaintiffs simply replead many of those

16  allegations, and they should be stricken.  Plaintiffs have also attempted to replead their

17  2007 allegations, added new allegations, and modified other allegations in a manner

18  that fails to satisfy both of the first two requirements.

19        **A.      The Repleaded Statements Previously Dismissed by the Court Should
            Be Stricken.**

20        Federal Rule of Civil Procedure 12(f) permits the Court to strike "any redundant,

21  immaterial, impertinent, or scandalous matter."  "Previously dismissed allegations that

22  failed to state a claim upon which relief can be granted under any applicable legal

23  theory should be stricken from an amended complaint."  *DeFazio v. Hollister, Inc.*, 2008

24  WL 958185, at *2 (E.D. Cal. Apr. 8, 2008).  This Court previously held that a large

25  number of statements were inactionable, either because they were forward-looking

26  statements protected by the safe harbor of the PSLRA, *see* 8/24/11 Order (#55) at 9-11;

27  7/11/12 Order (#86) at 2-4, 5-15, or because they were inactionable optimism, *see*

28

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

7/11/12 Order (#86) at 15-18. Plaintiffs simply replead the vast majority of these statements in their Second Amended Complaint. A complete schedule setting forth plaintiffs' repetition of the dismissed statements is set forth in Exhibit A.[3] Plaintiffs offer no new allegations that would render these inactionable statements actionable. Accordingly, the previously dismissed statements in Paragraphs 305, 306, 308, 310, 314, 316, 318, 320, 329, 332, 342, 350, 352, 354, 356, 358, 364, 368, 370-72, 374, 377, 381, 395, 401, 406, 408, 412, 416, and 419 should be stricken. *See, e.g., DeFazio*, 2008 WL 958185, at *2 (striking alleged misstatements previously dismissed); *see also Davis v. Astrue*, 2007 WL 2088580, at *4 (N.D. Cal. July 18, 2007) (striking allegations previously dismissed because they "failed to state a claim upon which relief can be granted under any applicable legal theory"); *Tavake v. Alameda County Board of Supervisors*, 2005 WL 2290308, at *2 (N.D. Cal. Sept. 20, 2005) ("[A]ll the previously-dismissed claims that the [plaintiffs] attempt to reassert by reincorporation in the FAC are stricken."). These paragraphs should also be dismissed for the reasons set forth in Sections B and C.

**B.    The New Statements Similar to Those Previously Dismissed Should Also Be Dismissed.**

**1.    Forward-Looking Statements Must Be Dismissed.**

As this Court explained, the PSLRA safe harbor protects statements that are: "(1) forward looking statements identified as such and (2) 'accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.'" 7/11/12 Order (#86) at 2.[4] "Statements are forward-looking 'as long as the truth or falsity of the statement

---

[3] Exhibit A provides an appendix that identifies the impermissibly repeated allegations of the Second Amended Complaint in accordance with the method employed by the Court in its 7/11/12 Order (#86).

[4] The PSLRA defines a forward-looking statement to include "a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items," 15 U.S.C. § 78u-5(i)(1)(A), "a statement of the plans and objectives of management for future operations," *id*. § 78u-5(i)(1)(B), "a statement of future economic performance," *id*. § 78u-5(i)(1)(C), or "any statement of the assumptions underlying or relating to any" of the

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1    cannot be discerned until some point in time after the statement is made.'" *Id.* (quoting

2    *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1067 (N.D. Cal. 2001)).

3          The Second Amended Complaint newly seeks to challenge a number of forward-

4    looking statements, including statements referencing construction budgets (*i.e.*,

5    projections of capital expenditures) and timelines for the opening of various

6    development projects (*i.e.*, statements of the plans and objectives of management for

7    future operations).[5]  These statements were made in SEC filings, press releases, and

8    conference calls that were expressly identified as containing forward-looking

9    statements and that this Court has previously held contained adequate cautionary

10   language.[6]  *See* 7/11/12 Order (#86) at 3 ("As this Court has previously determined in

11

12   previous categories of statements, *id.* § 78u-5(i)(1)(D).

13   [5] The forward-looking statements are identified in detail in Exhibit B.  Exhibit B
     provides an appendix that itemizes every statement challenged in the Second Amended

14   Complaint and specifies the reason(s) why each statement fails to state a claim.

15   [6] *See* LVS Form 10-K for the year ended 12/31/05, filed 2/28/07 ("2006 10-K") at 1, 22-
     39, 45, 67-68 ((#37-3) at 5, 26-43, 49, 71-72); LVS Form 8-K filed 8/1/07, Exhibit 99.1

16   ("8/1/07 press release") at 7 ((#37-4) at 24); LVS 2Q 2007 Earnings Call on 8/1/07
     ("8/1/07 earnings call") at 1-2 ((#37-4) at 33-34); LVS Form 10-Q for the quarter ended

17   6/30/07, filed 8/9/07 ("2Q07 10-Q") at 25, 42-43 ((#37-4) at 79, 96-97); LVS Form 8-K
     filed 11/1/07, Exhibit 99.1 ("11/1/07 press release") at 10 ((#37-4) at 126); LVS 3Q 2007

18   Earnings Call on 11/1/07 ("11/1/07 earnings call") at 1-2 ((#37-4) at 135-36); LVS Form
     10-Q for the quarter ended 9/30/07, filed 11/9/07 ("3Q07 10-Q") at 25, 44-45 ((#37-5) at

19   28, 47-48); LVS Form 8-K filed 2/4/08, Exhibit 99.1 ("2/4/08 press release") at 7 ((#37-5)

20   at 73); LVS 4Q 2007 Earnings Call on 2/4/08 ("2/4/08 earnings call") at 2 ((#37-5) at 84);
     LVS Form 10-K for the year ended 12/31/07, filed 2/29/08 ("2007 10-K") at 1, 21-34, 41,

21   56-57 ((#37-6) at 5, 25-38, 45, 60-61); LVS Form 8-K filed 4/30/08, Exhibit 99.1 ("4/30/08
     press release") at 7 ((#37-6) at 156); LVS 1Q 2008 Earnings Call on 4/30/08 ("4/30/08

22   earnings call") at 2 ((#37-6) at 166); LVS Form 10-Q for the quarter ended 3/31/08, filed

23   5/9/08 ("1Q08 10-Q") at 5, 8, 29, 42-43 ((#37-7) at 8, 11, 32, 45-46); LVS Form 8-K filed
     7/30/08, Exhibit 99.1 ("7/30/08 press release") at 7 ((#37-7) at 70); LVS 2Q 2008

24   Earnings Call on 7/30/08 ("7/30/08 earnings call") at 2 ((#37-7) at 81); LVS Form 10-Q
     for the quarter ended 6/30/08, filed 8/11/08 ("2Q08 10-Q") at 8-9, 33, 52-53 ((#37-7) at

25   115-16, 140, 159-60).  These documents, as well as other public statements by the

26   Company, were filed as exhibits to Defendants' Motion to Dismiss (#37), were properly

27   taken into account by the Court in its previous Orders, *see* 8/24/11 Order (#55) at 3;

28   7/11/12 Order (#86) at 3-4, and are incorporated by reference herein.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

the Order now under reconsideration (#55), the company provided meaningful cautionary statements on calls, in press releases, and in the other relevant documents.").[7] Accordingly, the forward-looking statements newly challenged in Paragraphs 293, 294, 295, 302, 305, 306, 322-23, 326, 329, 333, 337, 342, 343, 345, 352, 364, 366, 371, 379, 382, 385, 389, 397, 398, 410, and 420 should be dismissed for the same reasons that this Court previously dismissed the forward-looking statements challenged in the Amended Complaint.

### 2.   Statements of Optimism Must Be Dismissed.

As this Court has previously held, "[c]ourts, including the Ninth Circuit, recognize vague optimism as inactionable." 7/11/12 Order (#86) at 15. "Such statements are inactionable because they are immaterial in that they are either so exaggerated or vague that a reasonable investor would not rely on [them] in considering the total mix of available information.  Further, such statements are often so subjective that they defy objective verification." *Id.* at 15-16 (internal quotation marks and citations omitted); *see also City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2012 WL 3010992, at **14-15 (N.D. Cal. July 23, 2012); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at **12-13 (N.D. Cal. May 22, 2012).

The Second Amended Complaint newly seeks to challenge a number of statements that are inactionable optimism of the same type previously dismissed by this Court.[8]  Indeed, many of the newly challenged statements contain nearly identical language to the statements previously dismissed.  *See, e.g.*, SAC ¶¶ 360, 362, 385, 387,

---

[7] The statements in Paragraphs 337, 385, and 389 were made during presentations and conference calls not challenged in the Amended Complaint.  Like LVS's other conference calls, these commenced with cautions that they contained forward-looking statements and referred investors to SEC filings for further discussion of risk factors. *See* Ex. C, LVS Investor Day Conference on 2/11/08 ("Investor Day conference") at 1; Ex. D at 2 (slides presented during Investor Day conference); Ex. E, LVS Conference Call on 6/2/08 ("6/2/08 conference call") at 1, 11; Ex. F at 1-2 (slides presented during 6/2/08 conference call).

[8] The statements of inactionable optimism are set forth in detail in Exhibit B.

1   404. A representative example is the Company's statement in its April 30, 2008 press

2   release regarding The Venetian Macao:

> Both business and leisure visitors have contributed to strong hotel rate and solid occupancy statistics, reflecting the appeal of our product offering and the significant interest from around the region in the world-class amenities of our integrated resort. Our corporate meeting and convention businesses, although hindered somewhat by a lack of transportation infrastructure, are enjoying significant amounts of repeat business. Our entertainment offerings have been well received throughout the region, driving significant visitation to Macao. Our mass gaming volumes continue to grow and are the largest of any single property in Macao today, reflecting the popularity and acceptance of our product offering to this important market segment.

10   SAC ¶ 362 (newly added to the Second Amended Complaint). This statement includes

11   a number of the adjectives, such as "strong," "solid," and "significant," held by this Court

12   to be inactionable. 7/11/12 Order (#86) at 16-18. It also includes language about the

13   "appeal of our product offering" and the "popularity and acceptance of our product

14   offering to this important market segment" that is plainly inactionable statements of

15   optimism by management.

16   Accordingly, the optimistic statements in Paragraphs 289, 305, 306, 312, 326, 333,

17   337, 352, 360, 362, 364, 377, 379, 385, 387, 389, 395, 397, 398, 401, 404, 406, 412, and 416

18   should be dismissed for the same reasons that this Court previously dismissed

19   statements of inactionable optimism challenged in the Amended Complaint.

20   **C.   The Remaining Statements Must Be Dismissed Because Plaintiffs Have Not Pled Falsity or Scienter.**

21   To satisfy the falsity element of Section 10(b), plaintiffs must allege either (1) a

22   false statement of material fact, or (2) an omission of material fact that renders other

23   statements misleading. *See In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).

24   "The plaintiff must set forth what is false or misleading about a statement, and why it is

25   false. In other words, the plaintiff must set forth an explanation as to why the statement

26   or omission complained of was false or misleading." *Stac Elec.*, 89 F.3d at 1409. The

27   sufficiency of a complaint's allegations of falsity must be evaluated on a statement-by-

28

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1    statement basis, and those statements must be evaluated in context.  *See Rubke v. Capitol*

2    *Bancorp Ltd.*, 551 F.3d 1156, 1165-66 (9th Cir. 2009)**.**

3         To the extent a claim is based on alleged omissions, "plaintiffs must identify the

4    statements that are misleading due to alleged omissions and 'specify the reason or

5    reasons why the statements made by [the defendants] were misleading or untrue, not

6    simply why the statements were incomplete. '"  8/24/11 Order (#55) at 4 (quoting

7    *Rubke*, 551 F.3d at 1162).   For an omission to be actionable, plaintiffs must identify a

8    statement that, by virtue of the omission, "affirmatively create[s] an impression of a

9    state of affairs that differs in a material way from the one that actually exists." *Brody v.*

10   *Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

11        "Silence, absent a duty to disclose, is not misleading." *Basic, Inc. v. Levinson*, 485

12   U.S. 224, 239 n.17 (1988).  The law is clear that "a company is not required to forecast

13   future events or to caution that future prospects [may not be] as bright as past

14   performance." *Stac Elec.*, 89 F.3d at 1406 (internal quotations omitted).  Nor is a

15   company required to reveal internal projections.  *Id.*[9]  This is for good reason, as

16   "[c]ompanies generate numerous estimates internally," *In re Oracle Corp. Sec. Litig.*, 627

17   F.3d 376, 391 (9th Cir. 2010), many of which are tentative or subject to revision, and

18   therefore possibly misleading if publicly released, *see Searles v. Glasser*, 64 F.3d 1061,

19   1067-68 (7th Cir. 1995).

20        Moreover, plaintiffs must show that the defendants acted with scienter, "a mental

21   state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues &*

22   *Rights, Ltd.*, 551 U.S. 308, 319 (2007).  Plaintiffs must "stat[e] with particularity facts

23   giving rise to a strong inference that the defendant acted with the required state of

24   mind." *Id.* at 314.[10]  Here, plaintiffs have not pleaded any coherent theory of scienter

[9] *See also In re VeriFone Sec. Litig.*, 11 F.3d 865, 869-71 (9th Cir. 1993); *In re Lyondell Petrochemical Co. Sec. Litig.*, 984 F.2d 1050, 1052-53 (9th Cir. 1993).

[10]  The LVS Defendants have previously set forth the legal standards required to plead scienter.  *See* Motion to Dismiss (#37) at 39-48.  The inference of scienter must be "more than merely 'reasonable' or 'permissible; '" it must be "cogent and compelling" and the

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1   against any defendant, and the documents they have incorporated demonstrate that

2   each of the defendants was acting reasonably in view of what they understood at the

3   time. Through the summer of 2008, the defendants believed that the Company would

4   be able to obtain sources of funding to continue its development projects, and, once the

5   crisis in the U.S. credit markets reached catastrophic proportions in the fall of 2008, they

6   concluded that the best course was to sell equity, which the Company then proceeded

7   to do.

8        Not only does plaintiffs' theory of scienter make no sense, plaintiffs do not

9   demonstrate that defendants knowingly made false or misleading statements. *See*

10  *Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001) (to support an inference of scienter

11  based on knowledge contradicting public statements, plaintiffs must point to facts

12  showing that defendants knew their statements were false *at the time they were made*).

13       **1.    Statements about Plans to Raise Debt Financing and Flexibility
         in Obtaining Financing Should Be Dismissed.**

14

15       Plaintiffs seek to challenge a number of statements the Company made regarding

16  the Company's flexibility in financing its projects, the availability of funding, and

17  conversations with banks. *See* SAC ¶¶ 289, 314, 326, 337, 342, 368, 375, 385, 389, 395,

18  397, 401, 404, 408, 412, 414, 416, 419.[11]  A representative example, quoting statements

19  made during the February 11, 2008 investor day conference, states:

20       [Weidner:] Yes, I think everyone knows that the market is tight right now.

21  Court "must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 314,

22  323, 324. In other words, the inference of scienter must be strong and "at least as
    compelling" as any competing inference. *Id*. at 324. Scienter must be alleged with

23  particularity with respect to each individual defendant. *In re Downey Sec. Litig.*, 2009

24  WL 736802, at *8 (C.D. Cal. Mar. 18, 2009). Where, as here, plaintiffs fail to adequately
    plead that any individual defendant acted with scienter, and make no allegations of

25  corporate scienter, plaintiffs cannot establish scienter on behalf of LVS. *See, e.g., Glazer
    Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008).

26  [11] A number of these statements are forward-looking statements or statements of

27  inactionable optimism and should be dismissed on the grounds discussed *supra* at
    Section II.B.2, and many statements in these paragraphs have already been dismissed.

28  The remaining statements are addressed in detail in Exhibit B.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

It would be very difficult to go and raise those monies now.  Fortunately we have enough to be able to carry us through a period of time to allow us to reapproach the markets as we think they will become more favorable.

\*       \*       \*

I think we will always have access to capital with the kinds of developments that we're developing and with the ways that we operate. I think it's a matter of cost and right now the cost in the market place are kind of beyond where we would like them to be, obviously. So it's a combination.

\*       \*       \*

[Henry:]  We've been fortunate to have timed the market appropriately and in our favor over the last several years as we've raised money. We haven't over raised but we certainly haven't [under-raised] and we do have a fair amount of liquidity available to use.

\*       \*       \*

And I think we're in reasonably good shape, Celeste, to manage our way through this process and maintain the kind of liquidity that we have available to us.

\*       \*       \*

We have multiple avenues that are open to us today.

SAC ¶ 337 (newly added to the Second Amended Complaint).

Plaintiffs' theory is that such statements were false because LVS allegedly knew that it would not be able to obtain the funding necessary to complete its development projects, particularly on the Cotai Strip, and avoid a cash crunch in late 2008.[12]  In their Amended Complaint, plaintiffs set forth a number of foundational allegations to support this theory, including allegations that:

- LVS sought and was denied significant financing (up to $10 billion) in 2007.  *See, e.g.*, AC ¶¶ 3, 55-56, 63-71; *see also* SAC ¶¶ 3, 33-44, 49, 143, 290(c)-(d).

- LVS knew (as early as August 2007 and certainly by early 2008) that it would not be able to obtain debt financing to complete the Cotai Strip.  *See, e.g.*, AC ¶¶ 9-10, 62; *see also* SAC ¶¶ 9-10, 155.

- LVS knew (as early as August 2007 and certainly by early 2008) that it would have to issue equity to avoid a liquidity crisis and covenant breach.  *See, e.g.,*. AC

---

[12] Throughout the SAC, plaintiffs frequently plead their allegations by confusingly mixing and matching documents and statements from widely differing time periods:  in these respects, plaintiffs have engaged in impermissible puzzle pleading.  *See, e.g., In re MGM Mirage Sec. Litig.*, No. 2:09-cv-1558-GMN-LRL, 2012 WL 1031926, at \*\*2-4 (D. Nev. Mar. 27, 2012).

¶¶ 3, 55-56, 174-81; *see also* SAC ¶¶ 3, 47, 166, 224-25, 228.

- Consequently, LVS knew that its development projects were not sustainable. *See, e.g.*, AC ¶ 3-10, 31; *see also* SAC ¶ 3-10, 31.

The Second Amended Complaint contains these same allegations. However, it also contains extensive references to documents that directly contradict these allegations and reveal that plaintiffs' theory is without substance.[13]

The Ninth Circuit recently rejected a similar attempt in *In re Rigel Pharms., Inc. Sec. Litig.*, --- F.3d ----, 2012 WL 3858112 (9th Cir. Sept. 6, 2012) (affirming dismissal of allegations that company's statements about partnership prospects were misleading because it "knew" poor clinical trial results would prevent partnership plans), stating:

> Plaintiff does not allege any specific facts that would show that Defendants did not really expect to enter into a partnership, that Rigel was not really moving towards a partnership, or that Defendants believed that the clinical trial results were not statistically significant. Rather than adequately pleading that the statements regarding partnership plans and expectations were *false,* the complaint effectively pleads only that Defendants should have had different expectations and beliefs concerning partnership prospects. Because the complaint does not allege that Defendants falsely represented their actual partnership plans and expectations, the allegations are insufficient to plead falsity.

*Id.* at *10. Because defendants' statements regarding the availability or flexibility of financing are statements of opinion or belief, they only give rise to a claim "if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading." *Rubke*, 551 F.3d at 1162; *see also Ronconi*, 253 F.3d at

---

[13] As this Court has recognized, when ruling on a motion to dismiss, "the Court may take into account matters of public record, any exhibits attached to the complaint, and any documents referred to therein," including the Company's SEC filings. 8/24/11 Order (#55) at 3. Moreover, the Court "need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit' or 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Intuitive Surgical*, 2012 WL 1868874, at *8 (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). Space limitations on this memorandum prevent discussing each of the documents plaintiffs have incorporated. The documents demonstrating that plaintiffs' allegations are without merit are exhibits to this Motion. None of the other documents change that conclusion.

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

432 ("Honest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness.").  The documents referenced by plaintiffs show that plaintiffs fail on both counts:  the documents demonstrate that defendants had a reasonable basis for their belief that the Company had flexibility in obtaining financing, and the statements pertaining to financing were objectively not misleading at the time they were made.

> **a.**      **The Documents Show Financing Was Available in 2007.**

As an initial matter, plaintiffs' referenced documents provide no support for their allegations that the Company sought and failed to obtain $10 billion of debt financing in 2007.  *See* SAC ¶¶ 49, 143, 290(c)-(d).  To the contrary, the documents demonstrate that the Company obtained the financing it sought.

**2007 Macao Refinance**.  The referenced February 2007 document titled "Amendment of $2,500,000,000 Senior Secured Credit Facilities" (Ex. H, LVSC0038708[14] (cited in SAC ¶¶ 106-08, 307(a), 331(b), 381(b), 399(c))) shows that the Company was seeking to refinance on terms substantially similar to what it ultimately obtained, as described in later SEC filings.  The February 2007 document indicates that the Company was initially only contemplating borrowing $400 million on the accordion facility of the original Macao loan, but the Company subsequently obtained $800 million on the accordion facility.  *Compare id.* at LVSC0038726 *with* 2Q07 10-Q at 10-11 ((#37-4) at 64-65).  Similarly, the referenced April 2007 Citigroup document titled "LVS US Restricted Group Refinance and Upsize" describes the upsized Macao refinancing as a "success," and predicted that, in light of that success, "there will be strong demand" for a refinance and upsize of the U.S. credit facility.  *See* Ex. I, C-00083 at C-00086 (cited at SAC ¶ 177).

**2007 U.S. Credit Facility**.  With respect to the refinance and upsize of the Company's U.S. credit facility, plaintiffs reference internal documents from both Citigroup and Goldman Sachs demonstrating that the Company was seeking a $5

---

[14] Produced documents cited in the SAC, and in this Motion, are referred to by their bates numbers.

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

billion loan, which is precisely what the Company obtained.  *Compare* Ex. I at C-00083;
Ex. J, April 10, 2007 Goldman Sachs "Confidential Capital Committee Memo,"
GS_Group_00001752 at GS_Group_00001755 (cited at SAC ¶¶ 123, 177) *with* 2Q07 10-Q
at 11 ((#37-4) at 64).  Moreover, these documents show that the bankers were confident
that the Company would be able to obtain the financing it sought:

- "Leveraged Finance believes there will be strong appetite in the bank/capital markets for a name with the ability to generate significant cash flow such as Las Vegas Sands and projected total leverage of 5.5x (3.6x net leverage) in 2012. Coupled with general market appetite for gaming companies over the past year, we believe LVS will readily be able to access the capital markets, barring some unforeseen external or company-specific shock." Ex. I at C-00086.

- "The recent $800MM upsize to the Macao deal brought in a number of new banks to LVS. The CFO has indicated that several banks have expressed interest for the new deal and that MS and GE will have sizeable interest.  Given the new banks and the strips offering, and the existing bank group we feel comfortable that the $1.0bn revolver will be successfully syndicated.  The rest of the facility should be easier to syndicate." *Id.*

- "Given the lack of bonds, (this is the only way to invest in LVS debt), the existing loan was $1.2B, the success of the original Macao TLB and recent upsize and the company's track record, we believe there will be strong demand for the deal." *Id.*

- "Loan Capital Markets believes the proposed transaction can be successfully syndicated in today's market.  The US facilities are undersized relative to company performance and asset value." Ex. J at GS_Group_0001757.

**Singapore Permanent Financing.**  The documents dating from late 2007, when
the Company was completing its Singapore permanent financing, also reflect that the
Company had sufficient access to the capital markets.  Plaintiffs refer to an internal
October 10, 2007 Company memo titled "Marina Bay Sands Bank Loan Update" that
indicates that, with respect to the Singapore Permanent Financing, the Company "met
or achieved a superior result on virtually every major element of the deal and upon
completion will have set many new precedents for the Singapore market." Ex. K,
LVSC0004718 at LVSC0004719 (cited at SAC ¶ 140).  Similarly, Goldman Sachs' October
17, 2007 "Confidential Capital Committee Memo" with respect to the Singapore facility
states that "[n]otwithstanding the recent sub-prime issues and the huge back-log of

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1    leveraged finance positions in the US and Europe, the Asian loan market has been

2    relatively insulated where ample liquidity remains available, although the bank market

3    here is also exercising more caution in terms of underwriting, structure and pricing."

4    Ex. L, GS_Group_00030788 at GS_Group_00030797 (cited at SAC ¶ 138).

5        These documents confirm that the Company had ample access to liquidity in

6    2007, and that plaintiffs have no basis for their allegations that defendants "knew" in

7    2007 that the Company lacked "flexibility" or would not be able to obtain sufficient

8    funding to continue its development projects.  Therefore, the allegations in Paragraphs

9    289 and 326 must be dismissed.

10            **b.    The Documents Show Financing Was Available in 2008.**

11        Plaintiffs' incorporation of documents from 2008 similarly belie their allegations

12    of fraud in 2008.  The Goldman Sachs and Citigroup documents from 2008 referenced

13    by plaintiffs show that the bankers believed the Company could refinance its Macao

14    credit facility and obtain sufficient liquidity at the parent level to remain in compliance

15    with its loan covenants.  Plaintiffs incorporate a series of documents[15] in which

16    Goldman Sachs made presentations to the Company throughout the spring of 2008

17    regarding the possible structure of the Company's Macao refinancing.[16]  By the summer

18

19    [15] *See, e.g.*, Ex M, February 2008 Goldman Sachs presentation titled  "GS Internal
       Discussion Regarding Macao Financing," GS_Group_00024213 (cited at, *e.g.*, SAC ¶¶ 60,
20    355, 369, 376, 378, 390); Ex. N, March 4, 2008 Goldman Sachs presentation titled "Macao
       Financing Discussion Materials (Supplement)," GS_Group_00024480 (cited at, *e.g.*, SAC
21    ¶¶ 10, 83, 103, 228); Ex. O, April 9, 2008 Goldman Sachs presentation titled "Financing
       Discussion Materials," GS_Group_00031800 (cited at, *e.g.*, SAC ¶¶ 87, 171, 198, 369(b));
22    Ex. P, July 16, 2008 Goldman Sachs presentation titled "Financing Discussion Materials,"
       LVSC0009813 (cited at, *e.g.*, SAC ¶¶ 148, 409, 411, 417, 419).
23

24    [16] Plaintiffs allege that one of those recommendations was that the Company slow the
       pace of its development projects.  SAC ¶¶ 10, 369(b).  However, the March 4, 2008
25    Goldman Sachs presentation that purportedly contains that "recommendation" says
       nothing of the sort.  Goldman's actual recommendation was that "[g]iven the current
26    market volatility, LVS should consider a sequenced approach for its capital raising plan
       to ensure that sufficient capital is in place to fund its Macao expansion projects."  Ex. N
27    at GS_Group_00024481.  As the Second Amended Complaint itself makes clear, this is
       exactly what the Company disclosed it was planning to do.  *See, e.g.*, SAC ¶ 397
28

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9900 · FAX 702/474-9422

of 2008, the internal documents relied upon by plaintiffs show that the Macao refinancing was imminent, with Goldman Sachs and Citigroup, among others, serving as Lead Arranger and Global Coordinator of the deal. Specifically:

- A July 23, 2008 "Confidential Capital Committee Memo" prepared by Goldman Sachs (Ex. Q, GS_Group_00024314 (cited in SAC ¶ 158-60, 417, 419(h))), describes the Company and Goldman Sachs going forward with the Macao refinance and indicates that a number of banks had already participated in due diligence regarding the deal. *Id.* at GS_Group_00024319. This memo also notes that the Company was evaluating a $1.5 billion transaction to raise liquidity at the parent level. *Id.* at GS_Group_00024323-24.

- A Citigroup memo dated July 29, 2008 and titled "Greenlight to Commit $200MM to $5.25B Refinancing at Venetian Macao Limited" (Ex. R, C-06858 (cited in SAC ¶ 163)) provides confirmation that it was reasonable for defendants to believe that the Company could refinance its Macao credit facility and obtain the capital that it needed. *Id.* at C-06858 (noting that an initial due diligence session "for a large number of banks" had been held in early July, that Citigroup had greenlighted the deal on June 28, 2008, and that Citigroup expected numerous banks to commit to the deal; *id.* at C-06870-71 (discussing the strategy to syndicate the deal); *id.* at C-06858 (discussing the Company's consideration of a $1.5 billion financing at the parent level).)

These documents flatly contradict plaintiffs' theory that defendants "knew" that the Company would not be able to obtain financing to continue its development projects and remain in compliance with its loan covenants. To the contrary, far from showing any falsity or fraudulent intent of defendants' public statements, the documents now relied on by plaintiffs fatally undermine their claims. Plaintiffs thus have failed to plead that defendants' statements about the availability of financing were

_____

(quoting Mr. Weidner's statement that "our strategy for the funding of the development of the Macao properties has always been on a phased approach"); *see also* 2006 10-K at 24 ((#37-3) at 28) (noting that the Macao credit facility then in place "will not cover all of the costs of our other Cotai Strip developments. We expect that the other Cotai Strip developments will require significant additional debt and/or equity financings").) The reference to "[s]low[ing] down development pipeline in Macao" appears on a different page, titled "Status Update Supplement," under the subheading "Other Potential Considerations," in which Goldman lists a variety of considerations, including the possibility of adding another Asian bank as a lead member of the syndicate for the Macao refinance. Ex. N at GS_Group_00024482. Plaintiffs' allegation that LVS told investors "the opposite" of what Goldman Sachs advised (SAC ¶ 10) is false.

1   knowingly false when made.  Accordingly, the statements in Paragraphs 289, 314, 326,

2   337, 342, 368, 375, 385, 389, 395, 397, 401, 404, 408, 412, 414, 416, and 419 must thus be

3   dismissed.

4          To the extent plaintiffs argue that the cited documents reveal information that

5   the Company omitted from its public disclosures, plaintiffs' theory also fails.  The

6   documents demonstrate that events in the credit markets were rapidly evolving in 2008,

7   and that LVS's strategy was adjusting to reflect the availability of credit.  The

8   documents are completely consistent with the Company's actual public statements in

9   2008 regarding the availability of financing.[17]  They are also consistent with the

10  numerous public disclosures by the Company, and totally ignored by plaintiffs,

11  warning investors that the Company needed to obtain additional financing to continue

12  its development projects and that there were no guarantees that it would be able to

13  obtain that funding.[18]  The documents do not show that defendants made misleading

14

15  [17] Exhibit B provides a more detailed comparison between the Company's public
    statements regarding financing and the contemporaneous documents cited by plaintiffs.

16  [18] *See, e.g.*, 2006 10-K at 24 ((#37-4) at 28) (disclosing that the existing Macao credit facility

17  "will not cover all of the costs of our other Cotai Strip developments.  We expect that the
    construction of the other Cotai Strip developments will require significant additional

18  debt and/or equity financings.  We cannot assure you that we will obtain all the
    financing required for the construction and opening of The Sands Macao expansion,

19  The Venetian Macao or our other Cotai Strip developments"); 2Q07 10-Q at 27 ((#37-4)
    at 81) (disclosing projected Macao development costs and that the Company "will need

20  to arrange additional debt financing to finance those costs as well and there is no
    assurance that we will be able to obtain this additional debt financing"); 2007 10-K at 24,

21  54 ((#37-6) at 28, 58) (disclosing that existing credit facilities "will not cover all of the

22  costs of our remaining Cotai Strip developments.  We expect that the construction of the
    Cotai Strip developments will require significant additional debt and/or equity

23  financings" and that "[i]f we are not able to obtain the requisite financing or the terms
    are not as favorable as we anticipate, we may be required to slow or suspend our global

24  development activities, including our Cotai Strip development, until such financing or

25  other sources of funds become available"); 4/30/08 earnings call at 21 ((#37-6) at 185)
    (disclosing that the Company was "almost fully drawn on our facilities over in Macao"

26  and would "require incremental funding but before the end of this year"); 1Q08 10-Q at

27  7, 8 ((#37-7) at 10, 11) (disclosing that the Company "will need to arrange additional

28  financing in the near term to continue to fund these activities and is currently exploring

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

18

statements due to the omission of information about the availability of credit; instead, the documents corroborate the statements defendants made.  *See Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at *20 (N.D. Il. Apr. 19, 2012) ("Defendants disclosed enough of what they knew at the time they knew it to give the investing public a reasonably accurate and complete picture of [the Company's] current operations and short term prospects. . . . To claim that Defendants did not go far enough in explaining the 'true gravity of the situation'—when nobody could know the true gravity of the situation—is classic 'fraud by hindsight' pleading.").

### 2.    Statements of Historical Fact Should Be Dismissed.

A significant number of statements dismissed as forward-looking or inactionable optimism are presented by plaintiffs in the context of block quotes that contain other statements of pure historical fact, such as reports of the Company's operating results for the prior quarter or descriptions of amounts spent on construction.  These paragraphs should be dismissed in their entirety because plaintiffs do not dispute that the historical facts are entirely accurate.  In other words, with respect to these historical facts, the Second Amended Complaint does not "set forth an explanation as to why the statement or omission complained of was false or misleading."  *Stac Elec.*, 89 F.3d at 1409.

A representative example is found in Paragraph 306 (contained in AC at ¶ 199), quoted below with the previously dismissed forward-looking statements and statements of optimism indicated by strike-through text:

> "Our corporate meeting and convention businesses are also off to a ~~strong~~ start, our Non-Rolling table drop has increased by 32% in October

its options with respect to refinancing the Macao credit facility" and that "the Company may not be able to obtain additional borrowings when necessary," which may require the Company "to slow or suspend its global development activities, including its Cotai Strip development, until such financing or other sources of funds become available"); 7/30/08 earnings call at 6-7 ((#37-7) at 85-86) (disclosing that the Company was "currently evaluating various strategies that would put additional [] liquidity in place at the corporate parent, both to support our domestic credit facility, should that become necessary at some point in the future, and to provide additional liquidity and flexibility at the parent level to support our current and future development plans").

compared to September, and ~~volumes in our VIP gaming business have been outstanding and have clearly exceeded our expectations~~."

*      *      *

"~~Importantly~~, the Macao gaming market continues to expand ~~in response to the addition of high-quality capacity~~, with gross gaming win increasing by over 50% in the Macao market overall for the quarter ended September 30, 2007, compared to the same quarter in 2006. This continuing strong growth in the Macao marketplace~~, coupled with the overwhelmingly positive reception the public has show the Venetian Macao, provide positive momentum~~ as we expand our tradeshow, convention, corporate meeting, entertainment and retail offerings and amenities in the weeks and months ahead."

*      *      *

Weidner added, "With the Venetian Macao now successfully open, we have continued to ~~steadily~~ execute our development, marketing and promotional plans for the Cotai Strip, Macao, Hong Kong and the wider region."

*      *      *

"Our success in each of our business segments – Hotel, Retail, Entertainment, Group Meeting, Convention, and Gaming, ~~provide a fertile ground for us to begin to orchestrate these elements for maximum utility.  As each of these businesses continues to grow, we expect to tailor our services to increase our total revenue and maximize our operating income yield from the multiple business and customer segments we serve.~~ In October, our Non-Rolling chip table games drop increased by 32% compared to September. This positive upward trend in Non-Rolling chip table games drop at The Venetian Macao is consistent with the Non-Rolling chip table games drop trends reflected in the early days and weeks of the Sands Macao ~~and is an indication that the mass gaming floor of the property is beginning to mature. We expect the maturation of all the property's elements to continue over the coming months, and we expect to increasingly drive revenue and margin from the property as the maturation process for all our businesses continues in the months and years ahead.~~"

"~~In addition, our construction, design and development work on each of our other six sites on the Cotai Strip has continued to progress.~~"

*      *      *

"~~We continue to see strong performance across the board at The Venetian Las Vegas," continued Weidner.~~ "Although our quarterly results were negatively impacted by a lower than normal hold percentage, ~~the benefits of our targeted capital investments have continued to contribute to growth~~.  Our gaming volumes were strong, as table games drop increased nearly 35% year over year."

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

After the forward-looking and optimistic statements are removed, the first, second, fourth, and sixth paragraphs of this statement plead nothing more than descriptions of historical operating performance, which plaintiffs do not allege were inaccurate. Instead, plaintiffs appear to claim that these statements were misleading because they did not disclose that operating results were lower than what the Company had previously projected internally. This argument fails for the reasons discussed *infra* at Section II.C.2.a. The third paragraph merely informs investors that the Venetian Macao had opened and that the Company had continued with its development plans for the rest of the region. Plaintiffs do not allege that these statements were false as a matter of historical fact, and the documents on which they rely make clear that construction continued on the Cotai Strip in each quarter of the putative class period. Instead, plaintiffs argue that these statements were misleading because they did not disclose that the Company could not complete its development projects on its original schedule, but this argument fails as discussed *infra* at Section II.C.2.b.

### a.    Descriptions of Operating Results

This Court previously dismissed as inactionable optimism a number of statements characterizing aspects of the Company's performance as "strong" or "positive," as well as statements that management was "pleased" or "happy" with the Company's progress. As exemplified in Paragraph 306 above, many of these statements were embedded in block quoted paragraphs containing more detailed descriptions of aspects of the Company's progress (for example, quantifying the change in table drop or hold percentage, or describing the performance of the company's stores, restaurants, and shows).[19] Plaintiffs do not contend that the hard information provided by the Company in these paragraphs was inaccurate. Instead, plaintiffs allege that these statements are misleading because they do not disclose that the Company's results were

---

[19] These statements are set forth at greater length in Exhibit B. The relevant paragraphs include Paragraphs 289, 295, 304, 306, 308, 310, 312, 314, 316, 320, 323, 328, 352, 360, 362, 372, 377, 381, 382, 387, 394, 404, 419, and 420.

lower than the Company had at one time internally projected and lower than what plaintiffs contend would be necessary in order to comply with the Company's loan covenants in late 2008. *See, e.g.*, SAC ¶¶ 297, 306(e)-(g), 309, 311.

To the extent plaintiffs argue that these statements of historical fact were misleading because they do not disclose that the results were lower than the Company at one point had projected internally, plaintiffs' theory fails to state a claim. Not only is a company not required to disclose its internal projections, *see supra* at 10 & n.9, a company is "under no duty to cast its business in a perjorative, rather than a positive, light." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003); *see also Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 433 (5th Cir. 2002) ("[A]s long as public statements are reasonably consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of the company's current performance."); *In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig.*, 7 F.3d 357, 375 (3d Cir. 1993) ("In addition, the plaintiffs cannot successfully contend that the prospectus is actionable because it failed to describe its debt-equity ratio as either 'unwarranted' or 'excessive.'").

Moreover, to the extent plaintiffs may argue that these statements of historical fact were misleading because they do not disclose that the Company's results could worsen in the future, plaintiffs' theory also fails. As was the case in *Intuitive Surgical*, a recent case dismissing similar allegations that statements of the company's historical results were misleading because they failed to disclose negative trends that would limit the sustainability of the company's future revenue growth, "[t]hese Statements are strictly historical; none of these Statements purport to address the future sustainability of [the Company's] performance." 2012 WL 1868874, at *15. Plaintiffs cannot read into these statements a meaning which their language does not support. "Plaintiffs do not allege, nor is there any evidence that the statements are false, and contrary to plaintiffs' suggestions, 'disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future.'" *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2003) (quoting *In re*

*Sofamor Danek Group, Inc.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997)); *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538 (3d Cir. 1999), *abrogated in part on other grounds by Tellabs*, 551 U.S. at 325 ("Defendants may not be held liable under the securities laws for accurate reports of past successes, even if present circumstances are less rosy.") (citation omitted). For these reasons, the remaining statements in Paragraphs 289, 295, 304, 306, 308, 310, 312, 314, 316, 320, 323, 328, 352, 360, 362, 372, 377, 381, 382, 387, 394, 404, 419 and 420 must be dismissed.

        **b.**    **"Continued to Execute our Development Plans"/Backward Looking Descriptions of Construction Progress**

        Other forward-looking or optimistic statements are embedded in block quoted paragraphs containing descriptions of the Company's progress in constructing and developing the Cotai Strip, Marina Bay Sands, and Sands Bethworks. As in Paragraph 306 cited above, a number of paragraphs appear to challenge statements such as "[w]e have continued to execute our development plans for the Cotai Strip in all areas" or "our construction, design and development work on each of our other six sites on the Cotai Strip continued to progress." *See, e.g.*, SAC ¶¶ 289, 329, 354.[20] Plaintiffs never allege that, during the quarter in which these statements were made, the Company had ***not*** "continued to execute [its] development plans" or "continued to progress" with its "construction, design and development work" on the Cotai Strip. Instead, plaintiffs allege that these statements are misleading because they do not disclose that the Company's construction spending was lower than the Company had at one point budgeted or that the Company needed additional funds to continue these projects. *See, e.g.*, SAC ¶¶ 290(c), (d), (f)-(g), 306 (b), (l).

        Once again, plaintiffs ask the Court to disregard the plain meaning of these historically accurate statements in order to twist them into misrepresentations.[21] Even if

---

[20] These statements, and other statements with similar language, are set forth at greater length in Exhibit B, including Paragraphs 289, 306, 329, 333, 354, 358, 364, 379, 385, 394, 395, 401, and 412.

[21] As plaintiffs admit, construction and development work continued in each quarter of

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

the Company was experiencing construction delays on some projects[22] or needed to borrow additional funds to complete development, its statements that construction work had continued was accurate.  *See, e.g.*, *Mallen v. Alphatec Holdings, Inc.*, --- F. Supp. 2d ----, 2012 WL 987314, at *13 (S.D. Cal. Mar. 22, 2012) ("Plaintiffs fail to show how the omission of the fact that there were integration delays made Alphatec's statement that it had 'already begun to realize synergies' from the Scient'x acquisition misleading.  As an initial matter, this statement was literally true. . . . Finally, even assuming Alphatec was experiencing integration delays at the time, that fact is not inconsistent with Alphatec realizing synergies as a result of the Scient'x acquisition."); *see also Ronconi*, 253 F.3d at 434 ("A company could experience 'serious operational problems,' 'substantive difficulties,' and 'difficult problems,' and still have increasing revenues.").  As noted *supra* at 22-23, disclosure of historically accurate information is not misleading, even if future performance may be less favorable.  For these reasons, the remaining statements in Paragraphs 289, 306, 329, 333, 354, 358, 364, 379, 385, 394, 395, 401, and 412 should be dismissed.

### c.   Discussion with the Macao Government Regarding Four Seasons Macao Apartments

Additional forward-looking or optimistic statements are embedded in the Second Amended Complaint's block quoted paragraphs containing descriptions of the Company's discussions with the Macao government to identify a legal regime allowing

the challenged period.  *See, e.g.*, SAC ¶¶ 290(d), 290(e), 297, 307(b), 307(d), 330, 338, 365(c), 365(d), 381(e), 386(b), 390(a), 396(a), 399(a) (setting forth the amounts of capital expenditures on the Four Seasons Macao and the Cotai Strip in 2007 and 2008).

[22] Plaintiffs' allegations that the Company was experiencing construction delays are based solely on allegations that actual quarterly construction expenditures were lower than internal projections prepared months earlier.  The existence of construction delays is only one of many possible explanations for why actual quarterly construction spending was lower than budgeted, and thus plaintiffs have not pleaded with particularity that the Company was experiencing construction delays.  Moreover, the Company repeatedly disclosed the risk that its construction projects could experience delays or cost overruns.  *See, e.g.*, 2006 10-K at 23-24 ((#37-3) at 27-28); 2007 10-K at 23-24 ((#37-6) at 27-28).

24

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1    the sale of the Four Seasons Macao apartments and the timing of the opening of the

2    Four Seasons Macao hotel and casino.  Such statements include Paragraphs 318, 326,

3    366, 397, 398, and 406.

4           Plaintiffs do not allege that the historical facts contained in these statements, such

5    as the descriptions of government meetings or that the Company had received

6    expressions of interest in the apartments, were inaccurate.[23]  Therefore, plaintiffs have

7    not pled with particularity that these statements were misleading statements of fact.

8    Instead, plaintiffs allege that these statements were misleading because the Company

9    allegedly knew that it would not be able to sell the apartments and use that funding to

10   continue its other Cotai Strip developments.  SAC ¶¶ 319, 367, 399, 406.  Plaintiffs'

11   allegations are predicated on the existence of internal financial projections that did not

12   include projected cash in-flows from sales of the apartments.

13          As an initial matter, plaintiffs' theory rests on a false premise that because some

14   internal projections did not include predicted cash flows from the sale of the Four

15   Seasons apartments, the Company therefore knew that it would never be able to sell

16   those apartments.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir.

17   2012) ("[T]he court [is not] required to accept as true allegations that are merely

18   conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citation

19   omitted).[24]  Indeed, each public statement that references the apartments recognized that

20   sales had not begun precisely because there was no legal regime yet in place allowing

21   for the sale of the apartments.  *See* SAC ¶¶ 318, 366, 406.  As explained *supra* at 22-23,

22   having disclosed the fact that there was not yet a legal regime in place allowing for the

23   _____

[23] Plaintiffs also do not plead with particularity that the Company's statements about the
24   timing of the opening of the Four Seasons Macao hotel and casino were knowingly
     false.  Indeed, the facility opened on August 28, 2008, as the Company indicated.  *See*
25   LVS Form 10-Q for the quarter ended 9/30/08, filed 11/10/08 ("3Q08 10-Q") at 6 ((#37-
     8) at 64); SAC ¶¶385, 397.
26

[24] Indeed, other internal documents relied upon by plaintiffs do include estimates of
27   potential cash flows from the sale of the Four Seasons apartments.  *See, e.g.*, Ex. O at
     GS_Group_00031808; Ex. P at LVSC0009819.
28

25

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1    sale of the apartments and that the Company's strategy was to work with the Macao

2    government to implement such a regime, the Company was not required to be "overly

3    gloomy" about the prospects of its strategy's success.[25]   As such, the remaining

4    statements in Paragraphs 318, 326, 366, 397, 398, and 406 should be dismissed.

5              **3.      The Remaining Statements Must Be Dismissed.**

6         For the reasons set forth above, Plaintiffs have not adequately alleged that

7    defendants engaged in any fraudulent scheme.   Plaintiffs have only a handful of

8    remaining alleged misstatements, none of which state a claim.

9                   **a.      Third Quarter 2007**

10        Plaintiffs challenge a few statements made after the announcement of the

11   Company's second quarter 2007 results.   First, plaintiffs contend that the Company's

12   statement in its August 2, 2007 press release that "[f]inally, we completed a $5.0 billion

13   credit facility which … significantly increased our flexibility to move quickly to take

14   advantage of emerging development opportunities worldwide" (SAC ¶ 289) was

15   fraudulent.   This statement is easily categorized as a statement of inactionable optimism

16   and should be dismissed on this ground alone.   Moreover, plaintiffs have not pled with

17   particularity that it was untrue or misleading.   As noted *supra* at Section II.C.1.a, the

18   documents plaintiffs have now incorporated show that the Company received the $5

19   billion in financing it had sought, and thus plaintiffs' allegations that the Company did

20   not have "flexibility" is simply a fabrication.   Indeed, the referenced documents

21   demonstrate that the $5.0 billion credit facility resulted in an expansion of the

22   Company's U.S. credit facility by $3.38 billion, which is consistent with the statement in

23   the press release that it had "increased [the Company's] flexibility to move quickly and

24   take advantage of emerging development opportunities worldwide." *Compare* 2006 10-

25   K at 64 (#37-3 at 68) (noting that LVS had as of December 31, 2006 a U.S. credit facility of

26   [25] The Company also made progress in implementing this strategy. *See* Ex. G, LVS Form
27   8-K filed 11/3/08 at 1 (announcing that the Macao government has approved an
     amendment to the Company's land concession to enable the Company to transfer the
28   apartment-hotel tower into a cooperative so as to facilitate the sale of co-op interests).

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

$1.620 billion, of which $1.170 billion had been drawn down ) *with* 2Q07 10-Q at 11 ((#37-4) at 65) (noting that LVS had entered into a $5.0 billion facility in May 2007).

Plaintiffs also challenge a few statements from newspaper articles and analyst reports:

- An August 27, 2007 statement by a journalist that "Las Vegas Sands won't slow down its development in Macau" and a quote by Mr. Weidner that "We'll build more and more and more." SAC ¶¶ 296-97.
- Statements from several articles and an analyst report in August and September 2007 that indicated the Venetian Macao cost $2.4 billion. *Id.* ¶¶ 298-99.

As an initial matter, most of these statements should be dismissed as statements of third parties that cannot be attributed to the Company. *See* 7/11/12 Order (#86) at 5; *Juniper Networks*, 2012 WL 3010992, at *21 (dismissing certain allegations with respect to a defendant who did not have "ultimate authority over the statement, including its content and whether and how to communicate it") (citing *Janus Cap. Group, Inc. v. First Deriv. Traders*, --- U.S. ---, 131 S. Ct. 2296, 2302 (2011)). The only direct quotation, the statement by Mr. Weidner, is certainly accurate: the Company did continue to "build more and more and more" on the Cotai Strip, and in fact is still continuing to build its developments on the Cotai Strip to this day. Finally, the cost figures cited by journalists are consistent with the reported capital expenditures on the Venetian Macao, which plaintiffs do not challenge. (*See* 2007 10-K at 105 ((#37-6) at 109).)

### b.    January 4, 2008 Press Release

Plaintiffs allege that the statement in a January 4, 2008 press release that "[o]ur Marina Bay Sands development remains on track for a late 2009 opening" was misleading because "the Singapore development had hit serious snags." SAC ¶¶ 326-27. Most of the "snags" alleged by plaintiffs had nothing to do with the expected opening date of the Marina Bay Sands, and thus cannot constitute particularized pleading of falsity. Plaintiffs' allegation that cost overruns at the Marina Bay Sands meant that the new financing was not sufficient to cover the costs of construction is contradicted by the very documents they incorporated into the Second Amended Complaint, which

demonstrate that the Company was projecting no additional funding needs for the Marina Bay Sands project. *See* Ex. S, Feb. 12, 2008 draft "Sources and Uses" of cash document, LVS-PLTFS0006758 at LVS-PLTFS0006761 (cited at, *e.g.*, SAC ¶¶ 3, 128-29, 319, 339) (showing no additional funding needs for Marina Bay Sands and projecting positive cash flow from that project beginning in 2010).

### c. April 30, 2008 Investor Call

Plaintiffs allege that Mr. Weidner made a false comment in response to an analyst's question during the April 30, 2008 investor call. *See* SAC ¶¶ 348-49. But not only does the quoted question not provide any context for the forecast that was being referenced (*see* 4/30/08 earnings call at 21 ((#37-6) at 185)),[26] the Company did not publicly disclose its confidential internal forecasts of revenues, earnings, or EBITDA, or its adjustments to those forecasts during the year, and it had no duty to disclose them. *See, e.g., VeriFone*, 11 F.3d at 869-71; *Lyondell Petrochem. Co.*, 984 F.2d at 1052-53. Moreover, the documents referenced by plaintiffs reveal that, between January 2008 and March 2008, the Company's internal revenue projections had decreased, with the largest quarterly reduction taking place in the first quarter of 2008, thus demonstrating that Mr. Weidner's April 30 comments were accurate. *Compare* Ex. T, Jan. 18, 2008 Revised 2008 Operating Plan, LVSC0000562 at LVSC0000569 (cited at, *e.g.*, SAC ¶ 108) (forecasting 1Q08 revenues of $1.446 billion and total 2008 revenues of $6.1309 billion) *with* Ex. U, Mar. 25, 2008 Revised 2008 Operating Plan, LVS-PLTFS0006778 at LVS-PLTFS0006787 (cited at, *e.g.*, SAC ¶ 107) (forecasting 1Q08 revenues of $1.2271 billion and total 2008 revenues of $5.5044 billion). Moreover, the Company did not sugarcoat its actual first quarter 2008 performance, as the plaintiffs themselves plead that the Company reported operating income, adjusted net income, and GAAP net income that had declined year over year (*see* SAC ¶ 352), and Mr. Weidner emphasized to investors on April 30 that the Company's 2008 "first quarter operating results reflect both an intensely competitive

---

[26] The question and answer is reproduced in full in Exhibit B.

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1    operating environment in Macao as well as a weaker economic environment here in the

2    United States," (4/30/08 press release at 2 (#37-6 at 151)).

3                    d.      Third Quarter 2008

4           Finally, plaintiffs newly allege that statements in the August 11, 2008 Form 10-Q

5    made were misleading because the 10-Q did not include a going-concern qualification.

6    *See* SAC ¶ 419.  However, a going concern qualification is a statement made by a

7    company's auditors, not a statement made by a company itself.  Whether a going

8    concern qualification is necessary depends upon applicable auditing standards and the

9    auditor's judgment.  *See, e.g.*, *In re Polaroid Corp. Sec. Litig.*, 465 F. Supp. 2d 232, 246-50

10   (S.D.N.Y. 2006) (dismissing allegations against corporation and its officers based on a

11   purported failure by the third party auditor to issue a "going concern qualification

12   earlier than it did" because "the going concern decision rests entirely within the ambit of

13   the auditor"); *In re CDNOW, Inc. Sec. Litig.*, 138 F. Supp. 2d 624, 634-35 (E.D. Pa. 2001)

14   (dismissing allegations that defendants had a duty to disclose "that [the defendant

15   corporation] might receive a going concern qualification prior to" its issuance because

16   the "final decision regarding the qualification rested with" the defendant corporation's

17   auditors).  Plaintiffs have not challenged the audit work of the Company's auditors,

18   PricewaterhouseCoopers.  And, despite having received copies of the auditor's

19   workpapers in discovery, plaintiffs do not and cannot allege that the Company's

20   auditors had informed the Company that this 10-Q needed to include a going concern

21   qualification.  Thus, plaintiffs cannot plead that the failure to include a going concern

22   qualification is actionable or that the Company acted with scienter in issuing a quarterly

23   report without a going concern qualification.

24          D.      Plaintiffs' "Control Person" Claims Must Be Dismissed.

25          Plaintiffs purport to state a claim against each of the individual defendants as

26   "controlling persons" under Section 20(a) of the Exchange Act.  *See* SAC ¶¶ 440-42.

27   Section 20(a) claims, however, are derivative of Section 10(b) claims.  Where, as here,

28   the Complaint does not adequately allege an underlying violation of the securities laws,

                                                29

1   the Court must dismiss the Section 20(a) claim.  *See, e.g., Lipton v. Pathogenesis Corp.*, 284

2   F.3d 1027, 1035 n.15 (9th Cir. 2002).

3        E.     **Dismissal Should Be With Prejudice.**

4        Finally, in light of the failure of the Complaint to state a claim in any respect,

5   plaintiffs' claims should be dismissed with prejudice.  Courts may deny leave to amend

6   due to "repeated failure to cure deficiencies by amendments previously allowed" and

7   "futility of amendment." *Zucco Ptrs., LLC*, 552 F.3d at 1007.  "The district court's

8   discretion to deny leave to amend is particularly broad where plaintiff has previously

9   amended the complaint." *In re Read Rite Corp. Sec. Litig.*, 335 F.3d 843, 845 (9th Cir.

10  2003), *abrogated on other grounds by Tellabs*, 551 U.S. at 325 (citation omitted).  The Second

11  Amended Complaint represents plaintiffs' third bite at the apple, this time, with the

12  benefit of significant discovery.  That plaintiffs' claims are plainly deficient is ample

13  basis for this Court to dismiss them with prejudice.  *See Taddeo v. American Invsco Corp.*,

14  No. 2:08-CV-01463-KJD-RJJ, 2011 WL 4346380, at *3 (D. Nev. Sep. 15, 2011) (Dawson, J.)

15  (dismissing amended complaint with prejudice for failure to cure deficiencies and

16  futility of amendment); *In re Exodus Commcn's, Inc. Sec. Litig.*, 2005 WL 1869289, at *46

17  (N.D. Cal. Aug. 5, 2005) (dismissing third amended complaint with prejudice because,

18  "despite engaging in an extensive factual investigation, plaintiffs have been unable to

19  amend their complaint to state a claim for securities fraud").

20

21

22

23

24

25

26

27

28

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

III.    **CONCLUSION**

For all of the reasons set forth herein, defendants respectfully request that the Court dismiss the Second Amended Complaint with prejudice.

MORRIS LAW GROUP

By_____
Steve Morris, Bar No. 1543
Akke Levin, Bar No. 9102
Raleigh C. Thompson, Bar No. 11296
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

Walter C. Carlson (*Pro Hac Vice*)
Courtney A. Rosen (*Pro Hac Vice*)
Meredith J. Laval (*Pro Hac Vice*)
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, IL  60603

*Attorneys for Defendants*
*Las Vegas Sands Corp. and Sheldon G. Adelson*

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS LAW GROUP, and that the following documents were served via electronic service: **LVS DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF THEREOF**

TO:

Spencer A. Burkholz
Steven Pepich
Christopher D. Stewart
Robbins Geller Rudman & Dowd LLP
655 W. Broadway, Suite 1900
San Diego, CA  92101
Email:  spenceb@rgrdlaw.com
Email:  spepich@rgrdlaw.com
Email:  cstewart@rgrdlaw.com

David C. O'Mara
The O'Mara Law Firm, P.C.
311 E. Liberty Street
Reno, NV  89501
Email:  david@omaralaw.net

*Attorneys for Frank Fosbre*

Seth Ottensoser
Bernstein Liebhard LLP
10 East 40th Street
New York, NY  10016
Email: ottensoser@bernlieb.com

*Attorneys for Defendant
Shirley Combs*

Eric I. Niehaus
Brian O. O'Mara
Robbins Geller Rudman &
  Dowd LLP
655 W. Broadway, Suite 1900
San Diego, CA  92101
Email:  ericn@rgrdlaw.com
Email:  bomara@rgrdlaw.com

*Attorneys for Pension and
Pension and Retirement Group*

Mark D. Wray
Law offices of Mark Wray
608 Lander Street
Reno, NV  89509
Email:  mwray@markwrayaw.com

*Attorneys for Alvaro Elizondo*

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

32

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1   Tamara Beatty Peterson
    Brownstein Hyatt Farber Schreck, LLP
2   100 North City Parkway, Suite 1600
    Las Vegas, NV  89106-4614
3   Email:  TPeterson@bhfs.com

4   William F. Sullivan
    Daniel Scott Carlton
5   Paul Hastings Janofsky & Walker
    3579 Valley Center Drive
6   San Diego, CA  92130
    Email:  williamsullivan@paulhastings.com
7   Email:  scottcarlton@paulhastings.com

8
    *Attorneys for Defendant*
9   *William P. Weidner*

10          DATED this _____15th_____ day October, 2012.

11

12                         By _Patty Cammm_____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28