**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

FRANK J. FOSBRE, JR., individually and
on behalf of all others similarly situated,

                Plaintiff,

      v.

LAS VEGAS SANDS CORPORATION,
SHELDON G. ADELSON, and WILLIAM P.
WEIDNER,

                Defendants.

Case No. 2:10-CV-00765-APG-GWF

**ORDER (1) GRANTING MOTION TO
EXPAND CLASS PERIOD AND (2)
DENYING MOTION FOR HEARING**

(Dkt. #134, Dkt. #155)

      The court set forth the pertinent facts of this class action in a prior order and I will not repeat them here except where necessary. (Dkt. #55.) In brief, defendant Las Vegas Sands Corporation ("LVS") operates resorts and gaming properties in Las Vegas, Macao, and Singapore. Plaintiffs contend they purchased LVS stock at artificially high prices between August 2, 2007 and November 5, 2008 because during that period LVS made false and misleading public statements about its development plans, liquidity, and equity offerings.

      Plaintiffs bring claims under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 against defendants LVS, Sheldon Adelson, and William Weidner, and under section 20(a) of the Act against Adelson and Weidner for "control person" liability. The plaintiffs previously moved to certify a class with a class period running from August 2, 2007 through November 5, 2008.[1] (Dkt. #77.) The defendants did not oppose certification except on two limited grounds. (Dkt. #84.) First, the defendants argued the class definition should clarify that only those who were damaged by the defendants' alleged conduct should be included in the class definition. The plaintiffs agreed and the court adopted that formulation. Second, the defendants

---

[1] This date sometimes inadvertently has been stated as November 6, 2008. As the plaintiffs have clarified, however, the date should be November 5, 2008. (Dkt. #148 at 1 n.1.)

1    argued that the class period should be limited to those who purchased stock from February 4,

2    2008 through November 6, 2008 (the "Later Class Period") because there were no actionable

3    alleged misrepresentations prior to that beginning date.  The defendants argued that class

4    certification therefore should be denied for the period running from August 2, 2007 through

5    February 3, 2008 (the "Earlier Class Period").  This argument was related to the defendants'

6    motion to dismiss and motion for reconsideration.  Defendants otherwise did not oppose, at that

7    time, certifying a class for the Later Class Period. (*Id.* at 2 n.1.)

8         The court partially granted the defendants' motion and certified a class for the period

9    running from February 4, 2008 through November 6, 2008.  (Dkt. #55, #86.)[2]  The court held that

10   claims related to the Later Class Period were sufficiently pleaded but that the plaintiffs had not

11   pleaded scienter with sufficient particularity for the Earlier Class Period. (Dkt. #86.)  The court

12   therefore dismissed the insufficiently pleaded claims with leave to amend. (*Id.*)  The court also

13   indicated that it would entertain a motion to expand the class period to include the Earlier Class

14   Period if the plaintiffs amended the pleadings with sufficient particularity. (*Id.*)

15        The plaintiffs filed a Second Amended Complaint (Dkt. #87), which I held sufficiently

16   pleaded claims related to the Earlier Class Period, meaning the first date of actionable alleged

17   misconduct is August 2, 2007. (Dkt. #118.)  I indicated that based on this ruling, I would entertain

18   a motion to expand the class definition to cover the Earlier Class Period. (*Id.*)

19        The plaintiffs moved to expand the class period in January 2014. (Dkt. #123.)  The parties

20   subsequently requested I defer consideration of the issue pending the United States Supreme

21   Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.* (Dkt. #129.)  The Supreme Court

22

23        [2] The court defined the class as follows:

24        All persons or entities who purchased or otherwise acquired the common stock of Las
          Vegas Sands Corp. ("LVS" or the "Company") from February 4, 2008 through November
25        6, 2008, inclusive (the "Class Period") who were damaged by the Defendant's alleged
          misconduct.  Excluded from the Class are defendants, the officers and directors of the
26        Company at all relevant times, members of defendants' immediate families and their legal
          representatives, heirs, successors or assigns and any entity in which defendants have or
27        had a controlling interest.

28   (Dkt. #86 at 21.)

1    issued that decision on June 23, 2014.  The plaintiffs now move for expansion of the certified

2    class to include the Earlier Class Period.  The defendants oppose and request that I not only deny

3    expansion of the class, but also that I decertify the class with respect to the Later Class Period.

4         The parties agree I may alter or amend the certification order under Federal Rule of Civil

5    Procedure 23(c)(1)(C).  The only remaining issue between the parties on class certification is

6    whether common issues predominate under Rule 23(b)(3).  Specifically, the parties dispute

7    whether the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)

8    requires that to establish predominance, a plaintiff seeking to certify a class must show that

9    damages can be calculated on a class-wide basis and in a manner consistent with the theory of

10   liability.  Because *Comcast* and other relevant authority do not require a method to determine

11   damages on a class-wide basis as a prerequisite to predominance, and because common issues

12   predominate in this case, I grant the plaintiffs' motion to expand the class period to encompass

13   the Earlier Class Period.

14   **I. CERTIFYING A CLASS UNDER FEDERAL RULE OF CIVIL PROCEDURE 23**

15        A court may certify a class under Federal Rule of Civil Procedure 23 only if:

16        (1) the class is so numerous that joinder of all members is impracticable; (2) there
          are questions of law or fact common to the class; (3) the claims or defenses of the
17        representative parties are typical of the claims or defenses of the class; and (4) the
          representative parties will fairly and adequately protect the interests of the class.

18   Fed. R. Civ. P. 23(a).  In addition to these requirements, the plaintiff also must satisfy at least one

19   of the three conditions in Rule 23(b).  At issue here is Rule 23(b)(3), which requires the party

20   seeking certification to show that "questions of law or fact common to class members

21   predominate over any questions affecting only individual members, and that a class action is

22   superior to other available methods for fairly and efficiently adjudicating the controversy."

23        Rule 23 is not "a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

24   2541, 2551 (2011); *Comcast*, 133 S. Ct. at 1432.  Rather, the court must perform "a rigorous

25   analysis" to ensure Rule 23's requirements have been satisfied. *Dukes*, 131 S. Ct. at 2551.  That

26   analysis may "overlap with the merits of the plaintiff's underlying claim." *Id.*  However, the court

27   should consider merits questions only to the extent that they are relevant to determining whether

28

the plaintiffs have satisfied Rule 23's requirements. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). The inquiry is not whether the class will prevail on the merits of their claims but whether common questions capable of class-wide resolution exist and whether those common questions predominate over individualized ones. *Id.* at 1196.

**A. *Comcast***

The parties dispute the meaning of the Supreme Court's decision in *Comcast*. Defendants contend *Comcast* requires the plaintiffs to identify a method of calculating damages on a class-wide basis and in a manner that fits with the plaintiffs' theory of liability in the case. Plaintiffs respond that *Comcast* does not require a class-wide method of calculating damages in every case and, even if it does, they have presented evidence that such a method exists in this case.

*Comcast* does not require that every plaintiff seeking to certify a class must present a method of calculating damages on a class-wide basis. In *Comcast*, the parties did not dispute that to satisfy the predominance requirement in that particular case, the plaintiffs had to demonstrate an antitrust injury that was "capable of proof at trial through evidence that [was] common to the class rather than individual to its members; and (2) that the damages resulting from that injury were measurable on a class-wide basis through use of a common methodology." 133 S. Ct. at 1430 (quotations omitted). Consequently, "*Comcast* held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). But *Comcast* "did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance." *Id.* Nor did it hold that a class cannot be certified under Rule 23(b)(3) where damages cannot be measured on a class-wide basis. *Id.*

Following *Comcast*, the Ninth Circuit reiterated the long-standing rule[3] that individualized "damage calculations alone cannot defeat certification." *Leyva v. Medline Indus. Inc.*, 716 F.3d

_____

[3] *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."); *see also* Advisory Committee's 1966 Notes on Fed. R. Civ. P. 23 ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class.").

1  510, 513 (9th Cir. 2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094

2  (9th Cir. 2010)); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167-68 (9th Cir. 2014).

3  Other circuit courts agree that *Comcast* does not categorically require a class-wide method of

4  calculating damages as a prerequisite to certification.[4]

5          Moreover, a month before the Supreme Court issued *Comcast*, it stated in *Amgen* that

6  Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each "elemen[t]

7  of [her] claim [is] susceptible to classwide proof." 133 S. Ct. at 1196 (emphasis omitted); *see also*

8  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis omitted) (stating

9  that not "every question of law or fact must be common to the class").  Instead, the rule requires

10 "that common questions '*predominate* over any questions affecting only individual [class]

11 members.'" *Amgen*, 133 S. Ct. at 1196 (quoting Fed. R. Civ. P. 23(b)(3)).  Just two years prior to

12 *Comcast*, the Supreme Court stated in *Dukes* that it was "clear that individualized monetary

13 claims belong in Rule 23(b)(3)." 131 S. Ct. at 2558.  This statement would make no sense if a

14 class-wide method for determining damages was required in every case under Rule 23(b)(3). *See*

15 *id.* at 2558-59 (stating that Rule 23(b)(3) requires a superiority and predominance inquiry

16 because, unlike classes under Rule 23(b)(2), superiority and predominance are not "self-evident"

17 under Rule 23(b)(3) where each class member has an "individualized claim for money").

18 *Comcast* itself stated that it involved only "a straightforward application of class-certification

19 principles." 133 S. Ct. at 1433.  *Comcast* thus is not the sea change that defendants suggest.  In

20 sum, although I should consider whether damages may have to be ascertained on an individual

21 basis in deciding whether common issues predominate, the failure to set forth a common method

22 of determining damages does not defeat class certification in all cases. *Roach*, 778 F.3d at 408.

23 / / / /

24

25 [4] *See Roach*, 778 F.3d at 407; *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) ("But nothing in *Comcast* mandates a formula for classwide measurement of damages in all cases."); *In re Urethane*

26 *Antitrust Litig.*, 768 F.3d 1245, 1257-58 (10th Cir. 2014); *In re Whirlpool Corp. Front-Loading Washer Prod. Liability Litig.*, 722 F.3d 838, 860-61 (6th Cir. 2013) (stating that post-*Comcast* "it remains the

27 black letter rule that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members" (quotation omitted)); *Butler v.*

28 *Sears, Roebuck & Co.*, 727 F.3d 796, 800-02 (7th Cir. 2013).

**B.  Common Issues Predominate**

To determine predominance, I begin with the elements of the underlying causes of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011) (*Halliburton I*).  The plaintiffs in this action bring two claims: (1) securities fraud under § 10(b) and Rule 10b-5 and (2) control person liability under § 20(a).  The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b-5 are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.* (quotation omitted).  To establish control person liability under § 20(a), "a plaintiff must prove: (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003) (quotations omitted).

Even assuming there will be individualized damages calculations, common questions on both claims predominate over individualized ones.  As to the securities fraud claims, "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." *Halliburton I*, 131 S. Ct. at 2184.  Plaintiffs in a securities fraud lawsuit may seek to show reliance on a class-wide basis through the fraud-on-the-market theory first recognized in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and recently reaffirmed in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2405 (2014) (*Halliburton II*).  Under this theory, plaintiffs can satisfy the reliance element of a securities fraud claim on a class-wide basis by invoking a rebuttable "presumption that the price of stock traded in an efficient market reflects all public, material information—including material misstatements," and therefore "anyone who buys or sells the stock at the market price may be considered to have relied on those misstatements." *Halliburton II*, 134 S. Ct. at 2405.  Without this presumption of reliance, plaintiffs cannot pursue a § 10(b) or Rule 10b-5 lawsuit as a class action because "[e]ach plaintiff

1   would have to prove reliance individually, so common issues would not 'predominate' over

2   individual ones, as required by Rule 23(b)(3)." *Id.* at 2416.

3         To invoke this presumption of reliance, a plaintiff must show:

4       (1) that the alleged misrepresentations were publicly known, (2) that they were
    material, (3) that the stock traded in an efficient market, and (4) that the plaintiff

5       traded the stock between the time the misrepresentations were made and when the
    truth was revealed.

6

7   *Id.* at 2408.  If the plaintiff makes this showing, the defendant may attempt to defeat class

8   certification by showing "the alleged misrepresentation did not, for whatever reason, actually

9   affect the market price, or that a plaintiff would have bought or sold the stock even had he been

10  aware that the stock's price was tainted by fraud." *Id.*

11        Here, the defendants have never disputed that the plaintiffs are entitled to the *Basic*

12  presumption, at least at this stage of the proceedings.  The plaintiffs argued and presented

13  evidence on the fraud-on-the market theory in their original motion to certify (Dkt. #77, #78) and

14  in their motion to expand the class period (Dkt. #134).  The plaintiffs identified the alleged

15  misrepresentations which were publicly known given their means of dissemination, including

16  LVS's public filings with the Securities and Exchange Commission and comments made on calls

17  with market analysts. (*See* Dkt. #28; Dkt. #134-1.)  The plaintiffs need not present proof that the

18  alleged misrepresentations were material at the class certification stage because "materiality is

19  judged according to an objective standard," and the materiality of the alleged misrepresentations

20  therefore "is a question common to all members of the class." *Amgen*, 133 S. Ct. at 1191.  The

21  plaintiffs' expert opines that LVS stock traded in an efficient market. (Dkt. #134-1.)  Finally, the

22  plaintiffs present evidence they purchased LVS shares during the relevant time period. (Dkt. #78-

23  4 at 3; Dkt. #78-5 at 2.)  The plaintiffs thus have invoked the *Basic* presumption that reliance can

24  be determined on a class-wide basis under the fraud-on-the-market theory.  The defendants have

25  not argued that the plaintiffs have not invoked the presumption, nor have the defendants

26  attempted to rebut it.  The plaintiffs thus have shown reliance is a common question to the class

27  under the fraud-on-the market theory.

28

1    Other elements of the plaintiffs' securities fraud claim also raise questions common to the

2  class.  Whether the defendants made misrepresentations is a question common to the class, as is

3  whether those misrepresentations were material. *See Amgen*, 133 S. Ct. at 1195-96 (stating that

4  "materiality is a common question for purposes of Rule 23(b)(3)" (quotation omitted)).  Likewise,

5  whether defendants acted with scienter is a common question based on the defendants' state of

6  mind, not on any individualized inquiry involving class members.

7    The plaintiffs' claims under § 20(a) also involve common questions.  Whether Adelson or

8  Weidner exercised actual power or control over LVS are questions common to the class and will

9  require no individualized inquiries with respect to the class members.

10    Thus, even assuming damages will have to be determined on an individualized basis,[5]

11  common questions of whether the defendants made the alleged misrepresentations, whether they

12  did so with scienter, whether those alleged misrepresentations were material, whether the class

13  relied on the alleged misrepresentations, and whether Adelson or Weidner are control persons are

14  common questions which predominate over individualized damages inquiries.  It is preferable to

15  determine these common questions once, rather than a multitude of times (or not at all if the small

16  value of individual recoveries would deter any single plaintiff from bringing suit). (Dkt. #78-7 &

17  Dkt. #134-1 at 15 (showing millions of LVS shares sold during the relevant time-frame); *Butler v.*

18  *Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).

19    Because there is no dispute that the plaintiffs have satisfied Rule 23(a) and because I find

20  the plaintiffs have also satisfied Rule 23(b)(3), I grant the plaintiffs' motion to expand the class

21  period to include both the Earlier Class Period and the Later Class Period.  The class is defined as

22  follows:

23    All persons or entities who purchased or otherwise acquired the common stock of
     Las Vegas Sands Corp. ("LVS" or the "Company") from August 2, 2007 through
24    November 5, 2008, inclusive (the "Class Period") who were damaged by the
     Defendants' alleged misconduct.  Excluded from the Class are defendants, the

25

26    _____

     [5] The parties dispute whether the plaintiffs can construct a methodology capable of assessing
27  damages on a class-wide basis.  I need not resolve that issue now.  It suffices to certify the class on the
     predominant common questions even assuming defendants are correct that damages inquiries will have to
28  be conducted on an individualized basis.

officers and directors of the Company at all relevant times, members of
defendants' immediate families and their legal representatives, heirs, successors or
assigns and any entity in which defendants have or had a controlling interest.

**II.  CONCLUSION**

IT IS THEREFORE ORDERED that the plaintiffs' motion to expand the class period
**(Dkt. #134) is GRANTED**.

IT IS FURTHER ORDERED that the defendants' request for oral argument **(Dkt. #155)**
**is DENIED**.

DATED this 15th day of June, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE