UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FRANK J. FOSBRE, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>vs.<br><br>LAS VEGAS SANDS CORP., *et al.*,<br><br>          Defendants. | Case No. 2:10-cv-00765-APG-GWF<br>**Consolidated with:**<br>Case No.: 2:10-cv-01210-APG-GWF<br><br>**ORDER** |

This matter is before the Court on Plaintiff's Sealed Motion to Compel Production of Financial Documents (#156), filed on June 3, 2015. Defendant Las Vegas Sands Corporation ("LVS") filed its Sealed Opposition (#161) on June 22, 2015 and Plaintiffs filed their Sealed Reply (#165) on July 2, 2015. The Court conducted a hearing in this matter on July 6, 2015.

## **BACKGROUND**

Plaintiffs allege in this securities class action lawsuit, brought on behalf of purchasers of common stock of Las Vegas Sands Corporation between August 2, 2007 and November 5, 2008 (the "Class Period"), that Defendants LVS, Sheldon G. Adelson and William P. Weidner repeatedly made false and misleading statements to the market that caused the price of LVS stock to trade at artificially-inflated prices. Unbeknownst to investors, during the Class Period, LVS was facing a severe liquidity crisis that threatened to bring down LVS because it lacked the cash and funding resources that would enable it to continue or complete its multi-million dollar projects in the United States, Singapore and Macao. LVS publicly represented that it could complete its Macao expansion, and the market valued LVS stock based on its expected earnings from its developed properties being operational and adding to LVS's earnings in 2008 and later. Any acknowledgment by LVS that it

did not have the financial ability to timely complete the projects would – and ultimately did – destroy its stock value. *Second Amended Complaint (#87)*, ¶ 2.[1]

Plaintiffs allege that during the Class Period, Defendants were well aware that LVS had a severe liquidity crisis and that due to inadequate funding, LVS was running out of money and would have to halt construction of projects by the third quarter of 2008. Defendant Adelson, who owned more than 50% of LVS stock, rebuffed repeated requests by LVS's senior executives and financial advisors that LVS conduct an equity offering to raise needed funds. Plaintiffs allege that Defendant Adelson did not want to raise money from equity offerings because he would have been forced to contribute more of his personal funds in order to maintain majority ownership of LVS. When analysts questioned whether LVS would conduct an equity offering, Adelson told investors that equity financing was not necessary and that LVS had the necessary liquidity. *Id.*, ¶ 3.

Plaintiffs allege that by the end of the Class Period Defendants were forced to reveal to the public that LVS had been facing a severe liquidity crisis for many months, had run out of money, would have to halt most of its ongoing construction projects and needed an emergency infusion of cash to avoid bankruptcy. *Id.*, ¶ 4. As LVS began to collapse due the liquidity crisis, its stock price declined precipitously. LVS's stock, which was trading as high as $140 a share during the Class Period, declined to $10 a share at the end of the Class Period once investors understood the true liquidity picture and the reduced earnings abililty of LVS. *Id.*, ¶ 11.

Plaintiffs seek to compel production of financial documents of Defendant Sheldon Adelson and his family as follows:

> **Request No. 21:** All documents concerning the purchase or ownership of equity in Las Vegas Sands by defendant Sheldon D. Adelson or his family, including the effect on defendant Sheldon D. Adelson's ownership of the public issuance of equity in Las Vegas Sands.

> **Request No. 22:** All documents concerning the Company's private placement offering of convertible senior notes with the Company's principal stockholder and his family.

---

[1] It is not clear to the undersigned why the Second Amended Complaint (#87) is sealed in its entirety. The original Complaint (#1) and Amended Complaint (#28) are not sealed. Nor are Defendants' motion to dismiss (#37), Plaintiffs' response to motion to dismiss (#43), and Defendants' reply (#53) sealed.

> **Request No. 23:** All documents concerning the sale of Company stock to defendant Sheldon G. Adelson and his family in November 2008.
>
> **Request No. 24:** All documents concerning the ability, capacity, potential or possibility that defendant Sheldon G. Adelson or his family members would financially support Las Vegas Sands, including communications with outside advisors, consultants or counsel regarding such matters.

*Motion to Compel (#156), Exhibit 18.*

Defendants objected to these requests as overbroad, unduly burdensome, not relevant to the claims or defenses of any party, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants also objected to Request No. 24 to the extent it seeks discovery of documents protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection. The Court understands these requests to be limited to the time frame encompassed by the "Class Period," August 2, 2007 to November 5, 2008. Although Request No. 24 requests communications with "counsel," the Court understands that Plaintiffs do not, by this motion, seek discovery of privileged communications.

In support of their discovery requests, Plaintiffs restate their allegations that Mr. Adelson, together with the other defendants, concealed from the investing public LVS's true financial condition during the Class Period and that Mr. Adelson's refusal to authorize an equity offering until the end of the Class Period was motivated by his personal interest in maintaining majority ownership of LVS and that he subsequently structured his loans or investment to LVS to preserve his majority ownership. Plaintiffs summarize their allegations with respect to Mr. Adelson as follows:

> It was under these extremely adverse circumstances that Adelson, as the 69% shareholder, Chairman of the Board of Directors and CEO, was refusing to approve any equity-based securities offering both in the spring and fall of 2007, and again during the first three quarters of 2008, as LVS's severe liquidity crisis worsened. Nervous investors pointedly asked about LVS's liquidity situation, and LVS executives (including Adelson) told investors on the 1Q-08 and 2Q-08 conference calls that there was no liquidity issue and that raising funds through an equity-type offering was not necessary, when in fact the Wall Street banks had been advising defendants for months that an equity-based offering was immediately needed. LVS top executives knew it was necessary, yet Adelson stood in the way. Even after other senior executives were able to convince Board members in the spring/summer of 2008 that it was necessary to do an equity-type offering, Adelson (who controlled the Board) continued to hold up approval of such an offering.

> Against this backdrop, Adelson put his financial status at issue. Adelson told investors on the July 30, 2008 conference call that "the Company will not have liquidity problems." (¶408), and he would backstop LVS with the necessary capital investment so that it could *continue* the Macao development. In addition, defendants told investors on the April 30, 2008 conference call that LVS did not need to issue any equity, and did not have any liquidity issues. ¶¶368, 375. The documents at issue (Adelson's financial records) will show whether Adelson had the financial abililty, and the ***liquidity of assets*** to solve the liquidity problem, his views on the status of LVS's development plan, his views on prospects for new loans and why he was preventing the issuance of convertible loans.

*Motion to Compel (#156), pgs. 7-8.*

Plaintiffs allege that although Mr. Adelson was forced to loan LVS $475 million in late September 2008 so that LVS would not violate leverage ratio covenants on its U.S. credit facility, even with this cash infusion LVS continued to face ongoing liquidity problems. *Motion (#156), pg. 8.* Plaintiffs further allege that "Adelson reluctantly contributed the minimum amount of capital to keep LVS afloat (and keep his LVS shares from becoming worthless), but Adelson demanded onerous terms that benefitted himself and allowed him and his family to convert the loan into shares at any future equity offering price–even if the price was substantially lower." *Id., pg. 9.* "Just after the end of the Class Period when LVS was forced to suspend development of all Las Vegas and Macao projects, and tell its auditors and the public that there was substantial doubt it could continue as a going concern, Adelson made another $525 million investment." *Id.* Plaintiffs assert, however, that even with Mr. Adelson's "total $1 billion investment, LVS still had to publicly issue $1.6 billion in equity securities, ***and halt*** all Macao construction in order to survive into 2009." *Id.*

Plaintiffs allege that at the end of the Class Period when LVS's financial condition had become publicly known and its stock price had significantly dropped, Mr. Adelson converted his $475 million in notes into more than 87 million shares of LVS stock at $5.50 per share. "As a result of this two-step financial engineering, Adelson was able to retain his controlling interest in LVS, even after the huge public equity offering that Adelson had previously told investors LVS did not need." *Id., pg. 9.* Plaintiffs allege that Mr. Adelson's investments "in LVS equity-based securities most certainly involved many expert financial advisors and many calculations and analysis of different potential scenarios to help Adelson in his decision making and as he executed his personal

4

plan to maintain control of the struggling Company." *Id.*

Plaintiffs argue that the requested documents are relevant to proving (1) Mr. Adelson's resistence to permitting LVS to issue convertible notes and common stock; (2) Mr. Adelson's scienter when representing that LVS had no liquidity problems; (3) Mr. Adelson's knowledge of LVS's inability to obtain new debt financing; (4) whether Mr. Adelson knew that LVS needed to issue equity-based securities to stay afloat; and (5) Mr. Adelson's awareness that LVS's stock price was artificially inflated. *Motion (#156), pgs. 16-26.*

Defendants argue that Plaintiffs' allegations are based on a distorted portrayal of the evidence in this case. Defendants contend that they acted responsibly in the face of the global financial crisis which began in late 2007 and extended into 2009. Defendants point out that Mr. Adelson did, in fact, provide the investment to protect LVS from financial collapse and that prior to its approval, the $475 million loan convertible into shares was independently reviewed and determined to be fair. Defendants argue that Plaintiffs have failed to demonstrate that discovery relating to Mr. Adelson and his family's personal financial affairs is relevant and the motion to compel should therefore be denied.

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.[2]

---

[2]Pursuant to the amendments which became effective on December 1, 2015, Rule 26(b) now reads:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the litigation, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The "proportional" language was restored to the forefront of Rule 26(b)(1) to reinforce the obligation of the parties to consider these factors in making discovery requests, responses or objections. Advisory Committee Notes, 2015 Amendment.

Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Relevancy under Rule 26(b)(1) is liberally construed. *U.S. E.E.O.C. v. Caesars Entertainment, Inc.,* 237 F.R.D. 428, 431–32 (D.Nev. 2006). In *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389 (1978), the Supreme Court stated that the phrase "'relevant to the subject matter involved in the pending action' -- has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Although the scope of Rule 26(b)(1) was narrowed in 2000 to authorize discovery of information that is relevant to any party's claim or defense, the construction of relevancy set forth in *Oppenheimer* still applies within that somewhat more limited scope.

The party opposing discovery has the burden of showing that the discovery is irrelevant, overly broad, or unduly burdensome. *Graham v. Casey's General Stores,* 206 F.R.D. 251, 253–4 (S.D.Ind. 2000). To meet this burden, the objecting party must specifically detail the reasons why each request is irrelevant. *Id.,* citing *Schaap v. Executive Indus., Inc.,* 130 F.R.D. 384, 387 (N.D.Ill. 1990) and *Walker v. Lakewood Condominium Owners Assoc.,* 186 F.R.D. 584, 587 (C.D.Cal. 1999). "However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Marook v. State Farm Mutual Auto. Ins. Co.,* 259 F.R.D. 388, 394–95 (N.D.Iowa 2009), quoting *Cunningham v. Standard Fire Ins. Co.,* 2008 WL 2902621 at * 1 (D.Colo.).

**1.   Discovery Relating to Defendant Sheldon Adelson's Financial Condition.**

Discovery regarding a party's financial condition may be obtained if it is relevant to the claims or defenses in the case. *Wynn Las Vegas v. Zoggolis*, 2014 WL 2772241, *4-5 (D.Nev. June 17, 2014); *Pacific Coast Steel v. Leany*, 2011 WL 4572008 (D.Nev. September 30, 2011); *Dawe v. Corrections, USA*, 2008 WL 1849802, *5-9 (E.D.Cal. April 23, 2008); and *iSmart International Ltd. v. I-Docsecure, LLC*, 2006 WL 2263910, *2-3 (N.D.Cal. August 8, 2006). Where inquiry into a party's financial condition is of only marginal relevance and based on speculative assertions, however, the court may in its discretion deny such discovery. *Brady v. Conseco, Inc.*, 2009 WL 5218046, *2 (N.D.Cal. December 29, 2009); *Sarbacher v. Americold Realty Trust*, 2011 WL

2470681, *3 (D.Idaho June 20, 2011).  With the exception of tax returns, no special rules or limitations apply to the discovery of relevant financial information.[3]

Courts accord greater privacy protection to federal tax returns because the tax system depends on accurate reporting of income and deductions by taxpayers who might be less than candid on their returns if they were made available to opposing parties in the ordinary course of litigation.  *Sweeney v. The UNLV Research Foundation*, 2010 WL 1756875, *4 (D.Nev. 2010), citing *Robinson v. Duncan*, 255 F.R.D. 300, 303 (D.D.C. 2009) and *Hollinger International, Inc. v. Hollinger, Inc.*, 2005 WL 3177880, *4 (N.D.Ill. 2005).  Tax returns may be discovered, however, where the party's income or financial condition is in issue and where adequate, verifiable information regarding income is not otherwise available to the requesting party.  *Combe v. Cinemark USA, Inc.*, 2009 WL 2578853, 82 (D.Utah 2009).  If the requesting party shows the relevance of the producing party's tax returns, then the burden shifts to the producing party to show that other sources exist from which defendants may readily obtain the information.  *Continental Coal, Inc. v. Cunningham*, 2007 WL 4241848, *4 (D.Kan. 2007).  Plaintiffs state in their motion that they "are not seeking tax returns, but balance sheet type information that would show if Adelson had the ability to liquify his assets to contribute to a convertible debt offering during the time (spring/summer/fall of 2008) that he continued to refuse to approve its issuance." *Reply (#166), pg. 2.*  Given Plaintiffs' statement that they do not seek Mr. Adelson's or his family's tax returns, the Court, of course, will not order their production.

Plaintiffs have set forth a plausible claim that Mr. Adelson refused to approve a public equity offering with respect to LVS in 2007 and 2008, when it was being recommended by LVS's other executive officers and financial advisors, because Mr. Adelson wanted to protect his majority ownership interest in the company.  This claim is sufficient to place Mr. Adelson's financial condition during the "Class Period" in issue for purposes of discovery under Rule 26(b).  In order to obtain discovery regarding Defendant Adelson's financial condition, Plaintiffs are not required to

---

[3] Production of a party's financial information may appropriately be made subject to a protective order which prevents its disclosure to non-parties.

prove, and the Court is not required to find, that their claims are valid. That is a matter to be determined based on admissible evidence presented at trial or on motion for summary judgment. The Court also finds that the personal financial information sought by Plaintiffs is not out of proportion to the needs of the case under the factors set forth in Rule 26(b)(1). Information regarding Mr. Adelson's financial condition, in fact, appears key to Plaintiffs' ability to prove their claims against him, assuming that such claims have potential validity. The Court therefore concludes that Defendant Adelson's and his family's financial condition has sufficiently been placed in issue to justify an order requiring Defendants to respond to Requests for Production Nos. 21-24.

## 2. Relevant Documents From Yasmin Lukatz's Files.

Plaintiffs also move for an order compelling Defendants to search for and produce relevant documents from the files of Yasmin Lukatz. Plaintiffs allege that Ms. Lukatz worked directly for Mr. Adelson as "Special Asst. to the Chairman." They also allege that Ms. Lukatz is Sheldon Adelson's step-daughter, personal confident and was his advisor regarding LVS matters during the Class Period, including the Adelson family investments in LVS during September and November 2008. *Motion (#156), pg. 27.* As evidence that Ms. Lukatz's files may contain relevant information, Plaintiffs cite an email that Ms. Lukatz sent to LVS's CFO Robert Rozek and Scott Henry on March 4, 2008, stating: "I had a meeting today with David Solomon and Sheldon regarding GS concerns about our future financing in Macau." Plaintiff states that until Defendants produced this document, there was nothing in the record showing that Lukatz attended the March 4, 2008 meeting. *Id., pg. 28.* Ms. Lukatz also attended an April 14, 2008 meeting with Goldman where LVS issuing convertible notes was discussed. Ms. Lukatz also regularly appeared at Company board meetings. *Id., pgs. 28-29.* Plaintiffs further contend that Ms. Lukatz was directly involved in the management of the Adelson family's wealth, including the decision to invest over $525 million in LVS as part of the November 2008 public offering. Plaintiffs contend that an October 23, 2008 email reflects that Lukatz dined with Mr. and Mrs. Adelson and a top banker from Goldman to discuss various scenarios modeling whether the $525 million investment into LVS would allow the Adelson family to retain control of the Company and continue construction in Macao. Ms. Lukatz subsequently informed the Executive Director of Adfam LLC, a private company created to help manage the

family's money that the Adelson family would likely be investing the $525 million in the November offering. Lukatz also attended the November board meeting where the Adelson investment was discussed. *Id., pg. 29*.

In response to Plaintiffs' motion, Defendants state that three years earlier Defendants considered in good faith Plaintiffs' proposal to add Ms. Lukatz as a "custodian" whose files would be searched for relevant information. Defendants reviewed a representative sample of Ms. Lukatz's documents from the relevant time period and determined that "they were largely of an irrelevant or personal nature." *Opposition (#161), pg. 18*. Defendants state that "any few documents that were relevant had also been sent to other agreed custodians in this litigation, and therefore were duplicative of documents that would have already been produced." *Id.* Defendants therefore advised Plaintiffs that Ms. Lukatz was not a proper document custodian. In April 2015, Plaintiffs again raised the issue of Ms. Lukatz's documents. Defendants, however, reminded the Plaintiffs of their earlier meet and confer on the issue and that "Plaintiff's eleventh hour attempt to add a custodian was improper and untimely." *Id.*

Defendants further contend that Ms. Lukatz did not have a significant role in the subject transactions or events that she should now be designated as a custodian and a search conducted for relevant documents in her files. Defendants argue that a number of witnesses have testified that Ms. Lukatz played no role in the events giving rise to this lawsuit. Mr. Rozek testified that he only recalled Ms. Lukatz working on procurement projects that were unrelated to issues in this litigation and he did not have any recollection why Ms. Lukatz requested the information in point 2 of her March 4, 2008 email to him. *Opposition (#161), pg. 20*. Defendants further state that LVS has produced numerous documents relating to the March 4, 2008 meeting between Mr. Adelson and Goldman Sachs that Ms. Lukatz attended. *Id., pg. 21*. Defendants also appear to deny that Ms. Lukatz has significant involvement in the management of the Adelson family's personal assets to be a custodian for purposes of such discovery. Defendants contend that while Ms. Lukatz attended a dinner at which Mr. Adelson discussed illustrative financing scenarios with Adam Rosenberg, there is no evidence that Ms. Lukatz was involved in those discussions. *Id., pg. 22*.

. . .

1    Defendants make the following statement in opposition to Plaintiffs' request for documents
2    from Ms. Lukatz: "Finally, as referenced above, it is not true that Ms. Lukatz's documents 'are not
3    available from other sources.' In fact, LVS produced approximately 2700 documents, including
4    email families, during discovery that list Ms. Lukatz as a sender or recipient of a top-level e-mail, or
5    as an author of an attachment. (Carleson Decl. ¶ 10.) These documents, which were collected as
6    documents from the files of the 28 agreed custodians in this litigation, support LVS's long-held
7    position that Ms. Lukatz's documents, where relevant, are duplicative of documents that were also
8    found in the files of other custodians." *Opposition (#161), pgs. 22-23.* Plaintiffs argue, however,
9    this statement only provides further support for a search of Ms. Lukatz's files for relevant
10   documents. *Reply (#165), pg. 11.*

11   It may be that a search of Ms. Lukatz's files pursuant to the search terms agreed upon by the
12   parties will only result in the production of documents that have already been produced from the files
13   of other custodians. On the other hand, Ms. Lukatz's files may contain relevant memoranda of
14   meetings or discussions that were not forwarded to other custodians. Given Ms. Lukatz's position
15   vis a vis Mr. Adelson, and some indication that she attended relevant meetings and participated in
16   discussions of relevant matters, it is reasonably possible that her files contain relevant documents
17   that have not already been produced through other custodians. Furthermore, because Defendants
18   have not previously produced documents relating to the Adelson family's personal financial
19   condition, it is unknown what, if any, documents or information relevant to Plaintiffs' Requests for
20   Production Nos. 21-24 may be located in Ms. Lukatz's files. Finally, Defendants have not
21   demonstrated that a search of Ms. Lukatz's files for relevant documents will be unduly burdensome.
22   Based on the foregoing, the Court will grant Plaintiff's motion as it pertains to the files of Ms.
23   Lukatz.

## **CONCLUSION**

25   The Court finds that the information sought by Plaintiffs in Request Nos. 21-24 is relevant to
26   the claims alleged in this case and is reasonably calculated to lead to the discovery of admissible
27   evidence. The Court also finds that the files of Yasmin Lukatz may contain documents relevant to
28   the claims in this lawsuit and that her files should therefore be searched for relevant documents. Any

relevant, nonprivileged, documents discovered as a result of the search should be produced to Plaintiffs.   Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Sealed Motion to Compel Production of Financial Documents (#156) is **granted**.

DATED this 5th day of January, 2016.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge