**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 1 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| POMPANO BEACH POLICE & FIREFIGHTERS' RETIREMENT SYSTEM and ALASKA ELECTRICAL PENSION FUND, Lead Plaintiffs, On Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs-Appellants,<br><br> v.<br><br>LAS VEGAS SANDS CORPORATION; et al.,<br><br>        Defendants-Appellees. | No. 17-15216<br><br>D.C. No. 2:10-cv-00765-APG-GWF<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted April 12, 2018
San Francisco, California

Before: W. FLETCHER and TALLMAN, Circuit Judges, and MORRIS,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Brian M. Morris, United States District Judge for the District of Montana, sitting by designation.

The Pompano Beach Police & Firefighters' Retirement System and Alaska Electrical Pension Fund (collectively "Plaintiffs") appeal an adverse summary judgment in their securities fraud class action under §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. § 78a *et seq.*, against Las Vegas Sands Corporation ("LVS"), Sheldon Adelson, LVS's majority stockholder and controller, and William Weidner, the Chief Operating Officer. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Plaintiffs challenge five sets of statements: (1) Senior VP Henry's reassurances to investors that LVS had sufficient liquidity and access to credit markets; (2) Adelson's statements during the July 30, 2008, conference call; (3) Defendants' claims that the development in Southeast Asia was progressing and the opening dates were on track; (4) Stone's statement that Weidner had been misquoted regarding the 40% increase in costs in Singapore; and (5) Weidner's substitution of quarterly revenues for annual earnings on the April 30, 2008, earnings call. Finally, Plaintiffs allege control person liability against Adelson and Weidner under § 20(a).

**1.** The district court properly found that Henry's April 30, 2008, statements regarding LVS's financing prospects and the interest from Asian banks were future-oriented, looking to possible financing sources in the coming months. The "Disclaimer" at the outset of the call was a "meaningful cautionary statement" as

2

required by 15 U.S.C. § 78u-5(c)(1)(A).  These future-looking statements are protected by the safe harbor provision in federal securities law.

Henry's other statements from April 30, 2008, about prior conversations with banks and evaluating non-equity alternatives were not misleading because LVS was, in fact, meeting with banks and discussing financing options. *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016).

Even though Henry's "ample access" statement may be misleading, Plaintiffs failed to demonstrate how disclosing Henry's misstatement resulted in dropping stock prices, rather than "changed economic circumstances" from the contemporaneous global financial recession. *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 342–43 (2005).  Plaintiffs allege an August 2008 report in the *South China Post*, other statements in September, October, and November, and the Bank of America Equity Research Report were corrective disclosures.  While these may provide some evidence that the financing options may not have been as "ample" as Henry had made it seem, the *South China Post* article blames LVS's problems on "the global credit crunch" and "banks' reluctance to lend in the current credit market climate," not on Henry's previous statement.  When looking at the disclosures identified by Plaintiffs, there is no evidence to establish a "causal connection between the fraud and the loss." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (per curium) (citing *Nuveen*

3

*Mun. High Income Opportunity Fund v. City of Alameda, CA*, 730 F.3d 1111, 1119 (9th Cir. 2013)).  Therefore, Plaintiffs cannot establish a genuine issue of material fact as to loss causation resulting from Henry's April 30 statements.

**2.**  Further, Plaintiffs cannot establish a triable issue regarding Adelson's July, 30, 2008, earnings call statements.  Adelson's statements that the company would not seek equity financing, was considering various financing alternatives, had flexibility in financing, the "fundamentals" of LVS had not changed, and the pipeline was still continuing were not misleading.  In fact, they were true.

Adelson's statements about liquidity and flexibility of the projected or possible financing of LVS were forward-looking.  There is no evidence that, at the time, Adelson had knowledge or believed that the statement was false or misleading as required by 15 U.S.C. § 78u-5(c)(1)(B)(i).  Adelson participated in discussions about financing options and flexibility in early 2008.  Adelson also eventually did provide additional money to LVS to resolve liquidity issues.  Plaintiffs failed to raise a genuine issue of material fact as to falsity for Adelson's July 30 statements and the remaining statements fall within the safe harbor rule.

**3.**  All of the statements regarding the progress of the projects on the Cotai Strip were true.  None "affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

4

The statement that Sites 5 and 6 were "on track" falls within the safe harbor of forward-looking statements. It discusses "plans and objectives of management for future operations" and was accompanied by cautionary language. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (holding growth and revenue projections fell within the safe harbor); *see* 15 U.S.C. § 78u-5(c)(1)(A)(i).

4. While there may be a genuine issue of fact that Stone's statement was misleading and made with scienter, Plaintiffs cannot establish loss causation. Plaintiffs have not "show[n] that the revelation of that misrepresentation . . . was a substantial factor in causing the decline in the security's price." *Nuveen*, 730 F.3d at 1119 (quoting *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425–26 (3d Cir. 2007)).

5. Plaintiffs failed to raise a genuine issue of material fact as to loss causation for Weidner's statement. Even if the Bank of America Report impacted the stock price, Plaintiffs do not demonstrate how Weidner's false statement months before was a "substantial factor" in the decline when the disclosure does not mention EBITDAR or Weidner's April statement. *Id*.

6. Plaintiffs cannot raise a genuine dispute under § 20(a) for controlling person liability against Weidner or Adelson because, as discussed above, they

5

cannot "prove a primary violation of underlying securities laws." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).

Appellants shall bear the costs of appeal. *See* Fed. R. App. P. 39(a)(2).

**AFFIRMED.**